# EXHIBIT

## "1"

SHOPPING CENTER LEASE

BETWEEN

PALM SPRINGS MILE ASSOCIATES, LTD.

(Landlord)

AND

UNITED ARTISTS COMMUNICATIONS, INC.

(Tenant)

Dated: _Sept. 9_ , 1986

COPY

## SHOPPING CENTER LEASE

### TABLE OF CONTENTS

| ARTICLE | PROVISION | PAGE |
|---|---|---|
| 1. | Demised Premises | 1 |
| 2. | Term and Renewal Options | 2 |
| 3. | Rental | 2 |
| 4. | Construction of Building | 5 |
| 5. | Use and Continuous Operation; Restrictive Covenants | 11 |
| 6. | Compliance with Laws | 15 |
| 7. | Maintenance and Repairs | 16 |
| 8. | Alterations | 18 |
| 9. | Mechanic's Liens | 19 |
| 10. | Utilities | 20 |
| 11. | Common Facilities and Areas | 21 |
| 12. | Common Area Maintenance | 23 |
| 13. | Real Estate Taxes | 23 |
| 14. | Tax Appeals and Contests | 26 |
| 15. | Merchants Association | 27 |
| 16. | Intentionally Deleted | 28 |
| 17. | Indemnity and Insurance | 28 |
| 18. | Fire and Other Casualty | 31 |
| 19. | Condemnation | 34 |
| 20. | Access to Demised Premises | 37 |
| 21. | Rules and Regulations | 38 |
| 22. | Signs | 38 |
| 23. | Name of Shopping Center | 39 |
| 24. | Assignment; Subletting | 39 |
| 25. | Bankruptcy | 41 |
| 26. | Defaults and Remedies | 42 |
| 27. | Subordination | 45 |
| 28. | Lender's Requirements | 48 |
| 29. | Quiet Enjoyment; Tenant's Remedies | 49 |
| 30. | Surrender of Demised Premises | 49 |

| ARTICLE | PROVISION | PAGE |
|---------|-----------|------|
| 31. | Estoppel Certificate........................ | 51 |
| 32. | Broker..................................... | 52 |
| 33. | Parties Bound.............................. | 52 |
| 34. | Effect of Unavoidable Delays.............. | 53 |
| 35. | Attorneys' Fees........................... | 53 |
| 36. | Interest.................................. | 53 |
| 37. | Bills and Notices......................... | 54 |
| 38. | Miscellaneous............................. | 54 |
| 39. | Intentionally Deleted..................... | 55 |
| 40. | Arbitration............................... | 55 |
| 41. | Percentage Rent........................... | 57 |
| 42. | Exhibits.................................. | 60 |

EXHIBITS

Exhibit A:  Lease Plan of Demised Premises
Exhibit B:  Site Plan of Shopping Center
Exhibit B1: Lighted Parking Area
Exhibit B2: Tenant's Signs
Exhibit C:  Fixed Minimum Rent
Exhibit D:  Outline Plans
Exhibit E:  Rent Commencement Date Agreement
Exhibit F:  Sign Standards
Exhibit G:  Rules and Regulations
Exhibit H:  Photograph of Readerboard Sign for
            "The Movies at Regency"
Exhibit I:  Permitted Contractors for the Work

## SHOPPING CENTER LEASE

LEASE AGREEMENT, made as of the 9th day of
September , 1986, by and between PALM SPRINGS MILE ASSOCI-
ATES, LTD., having an address at P.O. Box 2307, 555 Palm
Springs Mile, Hialeah, Florida 33012 (hereinafter referred
to as "Landlord"), and UNITED ARTISTS COMMUNICATIONS,
INC., a Maryland corporation, having an address at 2545
Hempstead Turnpike, East Meadow, New York 11554 (hereinaf-
ter referred to as "Tenant").

### WITNESSETH:

### ARTICLE 1

### DEMISED PREMISES

1.1  Landlord hereby leases to Tenant, and Ten-
ant hereby takes from Landlord, upon and subject to the
terms, covenants and conditions hereinafter set forth,
that certain parcel of land located in the City of
Hialeah, County of Dade and State of Florida, as identi-
fied and delineated on Exhibit A attached hereto and made
a part hereof*(hereinafter referred to as the "Land"),
together with the buildings and improvements (hereinafter
referred to as the "Building") to be constructed on the
Land (the Land and Building are hereinafter collectively
referred to as the "Demised Premises"), which is part of
a larger parcel of land as shown on Exhibit B hereof on
which a shopping center known as "Palm Springs Mile
Shopping Center" (hereinafter referred to as the "Shopping
Center") is located.

SUBJECT, however, to:  (a) all building restric-
tions and regulations and zoning laws, ordinances, resolu-
tions and regulations now or hereafter in force of any
public authority or governmental agency or department hav-
ing jurisdiction; (b) violations of law, ordinances, or-
ders or requirements that might be disclosed by an exami-
nation and inspection or search of the Demised Premises by
any public authority or governmental agency or department
having jurisdiction as the same may exist on the date of
the commencement of the term of this Lease; (c) the condi-
tion and state of repair of the Demised Premises as the
same may be on the commencement of the term of this Lease;
(d) such matters as may be disclosed by an accurate survey
or inspection of the Demised Premises; (e) all taxes,
assessments, water charges and sewer rents, accrued or
unaccrued, fixed or not fixed (subject to proration as
provided in Article 13); and (f) covenants, leases, ease-
ments, mortgages, conditions, liens, encumbrances, re-
strictions, utility and all other matters and agreements
affecting the Demised Premises (hereinafter collectively
referred to as the "Permitted Encumbrances").

TO HAVE AND TO HOLD the Demised Premises for the
term and at the rents and upon the covenants, conditions
and agreements hereinafter provided.

Tenant hereby expressly covenants to keep, per-
form and observe all of the covenants, conditions and
agreements contained herein on its part to be kept, per-
formed and observed.

*and shown in diagonal markings and labeled as the "Demised
Premises" in Exhibit B-1 attached hereto and made a part hereof

1.2  Landlord represents to Tenant that the execution and delivery of this Lease by Landlord have been duly authorized by all requisite partnership action on the part of Landlord.  Tenant represents to Landlord that the execution and delivery of this Lease have been duly authorized by all requisite corporate action on the part of Tenant.

## ARTICLE 2

### TERM AND RENEWAL OPTIONS

2.1  The initial term (hereinafter referred to as the "Initial Term") of this Lease shall commence on the date hereof (the "Commencement Date") and shall continue until and expire on the last day of the month in which falls the twenty-first (21st) anniversary of the Rent Commencement Date (as hereinafter defined), unless sooner terminated or extended as hereinafter provided.

2.2  Tenant shall have two (2) successive options to extend this Lease beyond the Initial Term for two successive periods of ten (10) years each (each such extended period being hereinafter referred to as a "Renewal Term").  Tenant's option with respect to each Renewal Term shall be exercisable upon the following terms and conditions:  (a) said option for the first Renewal Term shall be exercised by written notice to Landlord given not less than twelve (12) months prior to the expiration of the Initial Term of this Lease, and said option for the second Renewal Term shall be exercised by written notice to Landlord given not less than twelve (12) months prior to the expiration of the first Renewal Term; (b) this Lease shall not have previously expired or been terminated; (c) there shall not be any Event of Default hereunder at the time of the exercise of said option or the commencement of the Renewal Term with respect to which said option is exercised; and (d) there shall not be any further right to extend or renew this Lease beyond the second Renewal Term. Time shall be of the essence with respect to the giving of each renewal notice by Tenant to Landlord.

During each Renewal Term, if the option therefor is effectively exercised by Tenant, all of the covenants, conditions and agreements of this Lease shall continue in full force and effect, except as to the term of this Lease and except also that Tenant shall pay to Landlord the Fixed Minimum Rent (as hereinafter defined) at the rates set forth on Exhibit C attached hereto and made a part hereof.

2.3  Unless otherwise indicated, the phrase "term of this Lease" or the word "Term" or any other word or phrase of similar import shall mean the Initial Term and each Renewal Term with respect to which Tenant shall have effectively exercised its option to extend this Lease.

## ARTICLE 3

### RENTAL

3.1  The Rent Commencement Date shall be the earlier to occur of the following:  (i) the date on which

Tenant shall open the Demised Premises for business; (ii) the date which is one year after the issuance by the applicable governmental agency of the permit authorizing the construction of the Building or (iii) the date which is two (2) years after the date of this Lease. Notwithstanding the foregoing, the Rent Commencement Date shall not be deemed to have occurred until Landlord has performed, if and to the extent necessary, such repairs to the public parking area of the Shopping Center designated as the "Restriping Area" on Exhibit B so that such area is usable for the parking of cars, provided, however, that if Tenant opens the Demised Premises for business prior to the completion of such repairs, the Rent Commencement Date shall be deemed to have occurred on the date Tenant opens the Demised Premises for business. After the Rent Commencement Date shall have been determined, Landlord and Tenant shall execute, acknowledge and deliver to each other duplicate originals of an instrument in the form annexed hereto as Exhibit E setting forth such date, within ten (10) days after a request therefor by one of the parties hereto. The failure of either party to execute and deliver such instrument shall in no way affect such Rent Commencement Date.

3.2 (a) From and after the Rent Commencement Date and for the balance of the Initial Term, Tenant agrees to pay to Landlord a fixed minimum rent (herein referred to as the "Fixed Minimum Rent") at the rates set forth on Exhibit C. Monthly installments of Fixed Minimum Rent, as well as all other amounts payable by Tenant to Landlord hereunder, shall be paid at the office of Landlord set forth above, or at such other place or to such other entity as Landlord may from time to time designate by notice to Tenant, without notice or demand therefor and without deduction, abatement or set-off for any reason whatsoever. The Fixed Minimum Rent shall be paid in advance on the first day of each and every calendar month commencing on the Rent Commencement Date, if it is the first day of a calendar month; and if the Rent Commencement Date does not occur on the first day of a calendar month, then the payment thereof shall commence on the first day of the calendar month immediately following such Rent Commencement Date and shall include a prorated amount for the period from the Rent Commencement Date to the last day of the month in which it occurs.

(b) The rates set forth in Exhibit C for the Fixed Minimum Rent are determined by multiplying the actual gross square-foot floor area of the Building (measured in accordance with this Section 3.2(b)) by the per square foot rental rates set forth in Exhibit C. For purposes hereof, the gross floor area of the Building (herein called "the Building Area") shall be measured from the outside exterior walls thereof and shall exclude mezzanine and projection booth levels. After the construction of the Building has progressed sufficiently to enable the Building Area to be measured, Landlord shall determine the Building Area and shall give Tenant written notice of Landlord's determination of the Building Area. Unless Tenant gives Landlord written notice ("Tenant's Dispute Notice"), disputing Landlord's determination of the Building Area and setting forth the Building Area as determined by Tenant, within twenty (20) days after Landlord notifies Tenant of Landlord's determination of the same, the Building Area set forth in Landlord's notice shall be conclusive and binding upon Tenant for all purposes of the Lease. If, however, Tenant timely gives Tenant's Dispute

-3-

Notice, the parties shall thereafter attempt to agree upon the Building Area.  If the parties reach agreement as to the Building Area, they shall promptly thereafter enter into a supplementary written agreement setting forth their agreement as to the Building Area and the Fixed Minimum Rent; provided, however, that the failure of either party to execute such supplementary agreement shall not affect the provisions hereof for the determination of the Building Area or the obligation of Tenant to pay Fixed Minimum Rent in accordance with the terms of this Lease. If Tenant shall timely give Tenant's Dispute Notice and within thirty (30) days after Landlord's receipt of same, the parties shall not have reached agreement as to the Building Area, then either party may at any time there-after submit the determination of the Building Area to arbitration in the manner provided in Article 40.  In addition to having the qualifications set forth in said Article, the arbitrators making such determination shall each be licensed architects or construction engineers having at least five (5) years of experience in their profession.  Pending final determination of the Building Area by the arbitrators, Tenant shall pay Fixed Minimum Rent determined in accordance with Exhibit C based on the Building Area as determined by Landlord's architect or engineer; if the Building Area is finally determined to be less than Landlord's determination thereof, the Fixed Minimum Rent shall be appropriately adjusted effective as of the Rent Commencement Date, and if the Fixed Minimum Rent theretofore actually paid by Tenant exceeded the Fixed Minimum Rent required to be paid by Tenant, Landlord shall refund the excess to Tenant within fifteen (15) days after Tenant's demand therefor.

3.3   Tenant agrees to pay to Landlord the appli-cable Florida sales tax on the amount of the rent payable each month, which sales tax shall be paid to Landlord as additional rent along with each monthly payment of rent. All costs, charges and expenses which Tenant assumes, agrees or is obligated to pay to Landlord pursuant to the provisions of this Lease shall be deemed additional rent, and in the event of non-payment thereof, Landlord shall have all the rights and remedies with respect thereto as is provided for herein or by applicable law in case of non-payment of rent (Fixed Minimum Rent and all additional rent are hereinafter collectively referred to as "Rent-al").  All charges for the years in which this Lease com-mences or terminates shall be prorated.

3.4   From and after the Rent Commencement Date, Tenant agrees to pay to Landlord, as additional rent, Com-mon Area Maintenance (as provided in Article 12), Imposi-tions (as provided in Article 13) and Percentage Rent (as provided in Article 41).  It is the purpose and intent of Landlord and Tenant that the Fixed Minimum Rent and Per-centage Rent shall be absolutely net to Landlord, so that this Lease shall yield, net, to Landlord the Fixed Minimum Rent at the rates set forth on Exhibit C and the Percent-age Rent, and that all costs, expenses and obligations of every kind and nature whatsoever relating to the Demised Premises and the appurtenances thereto and the use and occupation thereof, except as otherwise expressly set forth in this Lease, which may arise or become due during or out of the term of this Lease shall be paid by Tenant, and that Landlord shall be indemnified and saved harmless by Tenant from and against the same.

-4-

3.5  In the event Landlord does not receive from Tenant any payment of Rental within ten (10) days after its due date, and in order to compensate Landlord for the additional expenses and losses incurred by Landlord, Tenant agrees to pay to Landlord Interest (as defined in Article 36) accrued on the unpaid balance owing to Landlord for the period commencing with the due date thereof and terminating with the date on which Tenant makes full payment to Landlord as well as a separate charge (herein called a "Late Charge") equal to six percent (6%) of the amount so overdue.  Any such Interest or Late Charge shall be payable as additional rent hereunder; and Tenant's failure to pay such Interest or Late Charge within ten (10) days after Landlord's demand therefor shall automatically constitute a default by Tenant. Any acceptance by Landlord of payment of any late installment of Rental without the Interest or Late Charge shall not be construed as a waiver of Landlord's right to receive such Interest and Late Charge or subsequent Interest and Late Charge, or of Landlord's right to declare a default because of Tenant's failure to pay any such Interest or Late Charge.  In no event shall Tenant be required to pay an Interest or a Late Charge in excess of the maximum legal rate of interest payable in the State where the Shopping Center is located.  Notwithstanding the foregoing provisions of this Section 3.5, no Late Charge shall be imposed with respect to any late payment of Rental unless during the one-year period ending on the due date for such Rental payment two (2) or more late payments of Rental shall have occurred.  For purposes of the preceding sentence, a "late payment of Rental" means a payment of any Rental owing under this Lease which is not paid by Tenant within ten (10) days after the due date therefor.

3.6  Payment of Rental shall be deemed to have been made by Tenant when said payment has been received by Landlord, or credited to Landlord's bank by a wire transfer or deposit procedure previously authorized by Landlord.  No payment by Tenant or receipt by Landlord of a lesser amount than the amount due shall be deemed other than a payment on account of the earliest Rental due, nor shall any endorsement or statement on any check or in any letter accompanying any check or payment as Rental be deemed an accord and satisfaction or waiver, and Landlord may accept such check or payment without prejudice to its right to recover the balance of the Rental or to pursue any other remedy provided for in this Lease.  Landlord's acceptance of Tenant's late payment after Landlord has mailed a notice terminating this Lease (whether or not said late payment is accompanied by any Interest or Late Charge) shall not constitute a waiver of Landlord's right to terminate this Lease.

## ARTICLE 4

### CONSTRUCTION OF BUILDING

4.1  Tenant agrees, at its sole cost and expense, to do all work and supply all materials (hereinafter referred to as the "Work") to construct the Building upon the Land, in accordance with the provisions of this Article 4.  The Building shall be a new one-story building, designed as a theatre, containing at least eight (8) auditoriums, and having a gross floor area of not less than 30,000 square feet exclusive of mezzanine and projection booth space.  The Work shall include all necessary

facilities incident to the Building, together with all
site improvement work (including, but not limited to, the
installation of all utility services, entrances, ~~and park-~~
~~ing lanes and drives connecting the Demised Premises to~~
~~the parking areas of the common areas of the Shopping~~
~~Center~~, all fixturing and other work required for the
operation of Tenant's business and other Tenant improve-
ments, as shown and located on the Plans, except such work
that is to be done by Landlord expressly set forth in Sec-
tion 4.4 hereinbelow.  Tenant shall select a general con-
tractor to perform the Work through a competitive bidding
procedure and shall give Landlord or any firm selected by
Landlord an opportunity to bid as general contractor for
the Work, notwithstanding the foregoing, a subsidiary of Tenant
shall have the right to be the general contractor.

     4.2  Attached hereto and made a part hereof as
Exhibit D is a set of outline plans and specifications
(hereinafter referred to as the "Outline Plans") for the
Building.  Within seventy-five (75) days after the date
of this Lease, Tenant shall deliver to Landlord a set of
complete plans and specifications (hereinafter referred to
as the "Plans") for the Building which shall be consistent
with the Outline Plans.  Landlord shall, within thirty
(30) days of receipt of the Plans, either:  (i) approve
the Plans; or (ii) notify Tenant of any changes which may reasonably
be requested therein; in which latter event Tenant shall
promptly revise the Plans and resubmit the same to Land-
lord within thirty (30) days from the receipt of notifi-
cation.  Landlord shall not have any responsibility for or
liability in regard to the Plans, and Tenant shall have
the responsibility for and liability that the Plans comply
with all governmental requirements and insurance require-
ments as hereinafter provided.  Approval by Landlord of
the Plans shall not constitute or be construed as an
agreement by Landlord that the Plans comply with appli-
cable laws and insurance requirements or as a waiver by
Landlord of the right thereafter to require Tenant to
amend same to correct any omissions or errors therein
later discovered by Landlord.

     4.3  Within twenty (20) days after receipt of
Landlord's approval of the Plans, Tenant shall, at Ten-
ant's sole cost and expense, file all applications neces-
sary to obtain all permits required for the construction
of the Building and for the installation of Tenant's
signs, ~~including the installation of roof letters~~, and
Tenant shall promptly thereafter deliver copies of such
applications to Landlord.  Tenant shall exercise all due
diligence to obtain such permits.  Landlord agrees to
cooperate with Tenant, at Tenant's cost and expense, to
obtain all such permits.  If within ~~seventy-five (75)~~ days *one hundred
after the date of this Lease, Tenant shall not have made   twenty-five
due application for the necessary permits to construct the   (125)
Building, or at any time Tenant shall not be exercising
all due diligence to obtain such permits, then, without
limiting any other rights and remedies available to Land-
lord, Landlord shall have the right to seek to obtain any
of such permits at Tenant's expense, and to that end, Ten-
ant shall cooperate with Landlord and shall, upon Land-
lord's demand, (i) execute such instruments, agreements,
affidavits and other documents as shall be required or
reasonably requested by Landlord in order to obtain such
permits and (ii) reimburse Landlord for all costs and
expenses (including, without limitation, reasonable attor-
neys' fees) incurred by Landlord in obtaining or attempt-
ing to obtain any of such permits.  ~~In any event, if the~~
~~Building has not been substantially completed within two~~

-6-

~~years after the date of this Lease, then until the time, if~~
ever, that the Building is substantially completed, Landlord
shall have the right, in its absolute and sole discretion, to
terminate this Lease upon written notice to Tenant, in which
event the parties shall be relieved of any further liability
and obligations hereunder, except that, in the event Tenant
has theretofore taken possession of the Demised Premises,
Tenant shall be obligated to restore the Demised Premises to
their original condition as of the date such possession was
taken or, at Tenant's option, pay to Landlord the cost of
making such restoration, as reasonably determined by Land-
lord. The foregoing shall not in any wise be construed to
limit Landlord's right to terminate this Lease by reason of
the occurrence of an Event of Default. Provided that Tenant
shall have obtained all necessary building permits and com-
menced actual, physical construction of the Building within
two years after the date of this Lease, the two year period
referred to in the second to last sentence of this Section
4.3 shall be extended for the period, if any, that construc-
tion of Building is prevented by reason of any of the causes
~~or conditions described in Article 34.~~



4.4   Landlord agrees, at Landlord's cost and ex-
pense, to perform the following work on the Demised Premises
(hereinafter referred to as "Landlord's Work": (i) prepare
the site to provide all necessary utility services to the
Building, including water, sewer, gas and electricity, each
to a point not more than ten (10) feet distant from a wall of
the Building, (ii) restripe and make all necessary repairs to
the parking lot within the common areas of the Shopping Center
designated on Exhibit B as the "Restriping Area" (to the ex-
tent such restriping and repairs are necessitated by reason
of the construction of the Building) and provide adequate
lighting for said parking areas, and (iii) bring electricity
lines to Tenant's "readerboard" signs referred to in Section
22.1, provided that Tenant shall have first obtained all re-
quired permits for the construction and maintenance of such
sign. Landlord's Work may be performed by Landlord, either
prior to, or simultaneously with, the Work being performed by
Tenant, provided, however, that if any such utility services
to be brought to the Building by Landlord are necessary for
the performance of any of Tenant's Work and Tenant shall give
notice to Landlord of same, then Landlord shall bring such
utilities to the site in accordance with clause (i) of the
first sentence of this Section 4.4 prior to the commencement
of the Work to be performed by Tenant which requires such
utility service. If it shall be necessary for Tenant to per-
form any item of the Work as a prerequisite to completion by
Landlord of Landlord's Work, then Tenant shall commence such
work on the date specified by Landlord in a written notice
given to Tenant at least twenty (20) days prior to such spe-
cified date and shall thereafter continue to perform such work
with due diligence until completion. If Tenant shall fail to
comply with the foregoing, Landlord, in addition to any other
remedy it may have, shall have the right to proceed with and
perform any work which it has agreed to do for Tenant in ac-
cordance with Landlord's reasonable judgment and reasonable
discretion and the same shall be binding on Tenant.

4.5   Prior to Tenant commencing any portion of the
Work, Tenant shall:

(a)   obtain the necessary permits and ap-
provals for the construction of the Building from the gov-
ernmental authorities having jurisdiction thereof;

(b)   advise Landlord of the names of the
contractor or contractors to be engaged by Tenant to per-
form the Work, the selection of such contractor or con-
tractors to be subject to the reasonable approval of Land-

lord· Landlord will give notice to Tenant stating whether or not Landlord approves any such contractor selected by Tenant within ten (10) business days after Landlord's receipt of notice from Tenant, setting forth the name and address of the contractor(s) selected by Tenant; Landlord hereby approves in advance any of the contractors set forth on Exhibit I attached hereto as a contractor selected by Tenant to perform the Work; and

      (c)  furnish Landlord with United Artists Communications Inc.'s standard policies of comprehensive public liability insurance extended to include Fire Legal Liability and Worker's Compensation insurance.

4.6  Tenant shall perform the Work with due diligence and in a good and workmanlike manner in compliance with: (i) the building and zoning laws applicable to the Demised Premises and with all laws, ordinances, orders, rules and regulations of all Federal, state, county, and municipal authorities; and (ii) all terms and provisions of any insurance policy covering or applicable to the Demised Premises or any part thereof required to be carried by Tenant pursuant to this Lease, or any insurance policy carried by Landlord on the Shopping Center, and all orders, rules, or regulations, general and special, ordinary and extraordinary, foreseen and unforeseen, of any character and description whatsoever, pursuant to such policies, of any national or local Board of Fire Underwriters or (any other insurance body exercising similar functions) having jurisdiction as to the Demised Premises or any part thereof or the Shopping Center, or to the use or condition thereof.  Tenant shall not employ or permit the employment of any contractor, mechanic or laborer, if the use of such contractor, mechanic or laborer would create labor strife or difficulty, strike or jurisdictional dispute with other contractors, mechanics or laborers engaged by Tenant or Landlord or others.  Tenant shall complete such Work free and clear of all liens and encumbrances for work, labor and services, and free of all other liens and encumbrances, subject to Tenant's rights and obligations under Article 9.  Tenant shall perform the Work in such a manner as shall not materially interfere with the construction, use or enjoyment of the remainder of the Shopping Center.  Landlord reserves the right, at any time and from time to time, to enter the Demised Premises and inspect the Work in pro-

gress for the purpose of approving or disapproving the quality of the workmanship and the conformity of the Work with the Plans.

4.7   Upon completion of the Work to be performed by Tenant hereunder, Tenant shall furnish Landlord with:

(a)   a certificate of Tenant's architect certifying that the Work has been completed substantially in accordance with the Plans;

(b)   a certificate of occupancy issued by the appropriate governmental authority; provided, however, that if Tenant shall obtain a temporary certificate of occupancy, Tenant shall promptly thereafter commence and continue with due diligence the performance of all work required to obtain a permanent certificate of occupancy, and Tenant hereby agrees to obtain such permanent certificate of occupancy and deliver the same to Landlord;

(c)   a copy of each other certificate, permit, license, registration, authorization, receipt and other instrument of whatsoever kind that may be required for the lawful use of the Building by reason of any requirements of applicable governmental authorities and insurance agencies as hereinabove provided; and

(d)   evidence reasonably satisfactory to Landlord that all costs and expenses in connection with the Work have been paid by Tenant.

4.8   Legal title to the Building to be constructed by Tenant shall immediately upon construction vest and at all times remain in Landlord, subject to Tenant's right to use the same pursuant to this Lease and its right to remove Tenant's Property (as hereinafter defined).  Legal title to all alterations, additions, improvements, repairs, decorations (including any hard surface, bonded or adhesively affixed flooring), heating, ventilating and air-conditioning equipment and fixtures and plumbing facilities (other than Tenant's Property) which shall have been made, furnished or installed by or at the expense of either Landlord or Tenant in or upon the Demised Premises, shall vest in Landlord upon the installation thereof.

4.9   Provided no Event of Default has occurred, Landlord shall contribute the Tenant Work Allowance (as defined in Section 4.11) toward the cost of labor to be performed and materials to be furnished in connection with the Work in accordance with the following terms and conditions:

(i)   Tenant shall notify Landlord in writing promptly following the commencement of the Work;

(ii)   Thereafter, commencing upon the first day of the next succeeding calendar month and on the first day of each succeeding month, Tenant shall furnish to Landlord a written description of all Work completed during the prior month, together with copies of bills or invoices showing the cost thereof, and an Architect's Certificate, as hereinafter defined;

(iii)   Within thirty (30) days after Tenant's delivery of the items specified in (ii) above, Landlord shall pay Tenant an amount equal to the lesser of

-9-

(x) ninety percent (90%) of the cost of the Work completed during the prior month or (y) the undisbursed balance of the Tenant Work Allowance. After Tenant has delivered to Landlord the documents specified in Section 4.7 and Landlord shall have been furnished proof reasonably satisfactory to it that all of the Work has been fully performed and paid for (or will be fully paid for by application of the remaining balance of the Tenant Work Allowance), Landlord shall pay over to Tenant the remaining balance of the Tenant Work Allowance.

    (iv)  As used herein, an "Architect's Certificate" shall mean a certificate of Tenant's architect in charge of the Work, who shall be BMS Associates, A.I.A., or any other licensed architect selected by Tenant and reasonably satisfactory to Landlord, certifying (A) that the amount so to be paid to Tenant is then due and payable by Tenant to contractors performing the Work or has theretofore been paid by Tenant; (B) that the Work covered by such certificate has been completed substantially in accordance with the plans and specifications therefor; (C) that the sum requested, when added to all sums previously paid out under this Section 4.9 for the Work does not exceed the value of the Work performed to the date of such certificate; and (D) the estimated cost of completing the Work, in such reasonable detail as the Landlord or Landlord's lender may require. If requested by the architect delivering the Architect's Certificate, Landlord will state in writing the aggregate amount of the sums that have been previously paid out by Landlord pursuant to this Section 4.9, and said architect may rely on said amount stated by Landlord for purposes of giving the certification set forth in the preceding clause (C) of this subparagraph (iv).

    (v)  If the Landlord elects to finance all or a portion of the Tenant Work Allowance, then, notwithstanding the provisions of subparagraphs (i) - (iv) above, the timing and manner of payment of the proceeds of the financing shall govern disbursement of the Tenant Work Allowance hereunder, provided that the same provide for disbursement of payments quarter-annually (or more often) and otherwise conform to customary construction lending practices of institutional lenders. Tenant agrees to cooperate with Landlord in connection with any such financing, and agrees to furnish, or cause its architect and contractors to furnish, all such documents or certificates required by any such lender prior to closing of any such loan or disbursement of any proceeds thereunder.

    4.10  Notwithstanding anything herein contained to the contrary, (x) Landlord shall not be required to make any disbursement of the Tenant Work Allowance if the undisbursed portion of the Tenant Work Allowance shall be insufficient to pay for the cost of completing the Work that remains uncompleted; and (y) if any mechanic's, materialman's or similar lien is filed against the Demised Premises or any part of the Shopping Center by reason of any work, labor, services or materials done for, or supplied or claimed to have been done for, or supplied to, Tenant or anyone claiming under or through Tenant, Landlord shall not be required to make any further disbursement of the Tenant Work Allowance until all such liens are removed of record by payment, bonding or otherwise.

4.11   The term "Tenant Work Allowance" shall initially mean a sum equal to $1,500,000.00.  Said sum was determined by multiplying 30,000 square feet by $50.00 per square foot.  If the Building Area, as finally determined or agreed upon in accordance with Section 3.2(b), is more or less than 30,000 square feet, the Tenant Work Allowance shall be adjusted by multiplying the Building Area, as so determined or agreed upon, by $50.00 per square foot, and, (i) if Landlord shall have theretofore advanced sums to Tenant pursuant to Section 4.9 which are in excess of the sums that were required to be advanced by Landlord pursuant to said Section based on the Tenant Work Allowance as so adjusted, Tenant shall pay such excess to Landlord as additional rent within ten (10) days after Landlord's demand therefor (or Landlord, at its option, may deduct same from any further payments of the Tenant Work Allowance), or (ii) if Landlord shall have theretofore advanced sums to Tenant pursuant to Section 4.9 which are less than* ~~the sums that were required to have been advanced by Landlord pursuant to said Section based on the Tenant Work Allowance as so adjusted,~~ Landlord shall pay the deficiency to Tenant within ten (10) days after Tenant's demand therefor.

*the Fifty ($50.00) Dollar per square foot Tenant Work Allowance, then ℬℬ

ARTICLE 5

USE AND CONTINUOUS OPERATION; RESTRICTIVE COVENANTS

5.1   Subject to and in accordance with all rules, regulations, laws, ordinances, statutes and requirements of all governmental authorities and any fire insurance board or rating organization, and any similar bodies having jurisdiction thereof, the Demised Premises is to be used by Tenant solely for the exhibition therein of motion pictures (16mm., 35mm., 70mm., "wide-angle" or other process or size now known or hereafter developed) or otherwise for the audio-visual display to viewers or listeners in the Demised Premises of vaudeville, dramatic, opera, concert, lectures or any other lawful theatrical performance or entertainment.  Tenant shall have full, sole and complete control and discretion with respect to the content, length, quality, type, runs, frequency of showings, cost of film acquisition and other aspects of the films and other presentations exhibited on the Demised Premises; provided, however, that Tenant shall not ~~(i)~~ exhibit any pictures or permit any performances ~~in the~~ Demised Premises which are "X" rated, or ~~(ii)~~ if such "X" rating is no longer used, exhibit pictures or performances that are rated sub~~stant~~ially equivalent to what is presently rated as "X", or (iii) if the picture or performance is not ~~rated~~, exhibit any such non-rated pictures or performances whose content is substantially equivalent to pictures or performances which are presently rated as ~~"X", or (iv)~~ exhibit**or sell anything or permit any performance in the Demised Premises that would be considered pornographic by law.
**any picture

5.2   Notwithstanding any other provisions of this Lease, Tenant will conduct its business in the entire Demised Premises in accordance with the uses permitted hereinabove, subject, however, to all of the terms, covenants and conditions of this Lease, and in such consistent manner therewith as will achieve the maximum volume therefor.  Tenant will keep the Demised Premises open for business, ~~with an adequate staff of employees,~~ continuously on each and every day of the week, Monday through Sunday, be-

tween the hours of 7:00 p.m. and 11:00 p.m., provided that
in no event shall the Demised Premises be open for busi-
ness for less hours per day than is typical for the opera-
tion of a majority of the other movie theatres in Dade
County, Florida.

5.3   Tenant covenants and agrees that during the
Term and any extensions or renewals thereof Tenant will
not, directly or indirectly, engage in any business simi-
lar to or in competition with that for which the Demised
Premises are let, within a radius of three (3) miles of
the Shopping Center, without Landlord's prior written con-
sent.   The covenant of the preceding sentence shall be
inapplicable to any business of Tenant extant as of the
date hereof, provided the nature and character of such
business remains the same and is continuously operated at
the same location.   If Tenant shall breach the covenant
contained in this Section 5.3, then, in addition to the
rights and remedies provided under the Lease, Landlord
may, at its option, either (i) terminate this Lease upon
thirty (30) days' written notice to Tenant or (ii) enjoin
the operation of the violative store of Tenant.

5.4   (a)   So long as (i) Tenant shall have duly
kept and performed all of the terms, covenants and con-
ditions of this Lease on Tenant's part to be kept and per-
formed, (ii) Tenant shall be occupying the Premises and
actively conducting business therein in accordance with
the uses permitted hereinabove, ~~and~~ (iii) no Event of
Default shall have occurred under this Lease,**Landlord
agrees that, during the Term of this Lease, Landlord shall
not enter into any lease covering any space located in the
area of the Shopping Center between West 4th Avenue (Red
Road) and West 12th Avenue and south of West 49th Street,
which lease permits the premises demised thereunder to be
used as a movie theatre; provided, however, that the fore-
going restriction shall not apply to the space in the
Shopping Center which is presently leased to Wometco
Theatres (the "Excluded Space"), it being understood and
agreed that Landlord shall at all times be free to permit
the Excluded Space to be used as a movie theatre by any
tenant or occupant.   If any other tenant or occupant shall
be using any premises in the Shopping Center in violation
of this Section 5.4 (any such tenant or occupant herein
called an "Offending Tenant"), Landlord ~~at its option,~~ *and
~~may permit~~ Tenant ~~to~~ will institute and prosecute at Tenant's
sole cost and expense, with counsel acceptable to Land-
lord,**legal proceedings against such Offending Tenant in
order to prohibit such use.~~and to the extent required to~~
enable Tenant to prosecute such proceedings for the pur-
pose of prohibiting such use, Landlord shall assign to
Tenant, without recourse, representation or warranty, all
of Landlord's rights to prohibit such use by such Offend-
ing Tenant), in which event Landlord shall have no further
obligation to Tenant under this Section.   In any event,
Tenant's sole remedy in the event of a breach of this Sec-
tion 5.4 by Landlord shall be to bring an action for an
~~injunction.~~

(b)   Provided that this Lease is in force
and effect and no Event of Default has occurred hereunder,
if the existing lease covering the Excluded Space expires
or is terminated, and thereafter Landlord receives a bona
fide offer to lease the Excluded Space or any part thereof
for the operation thereon of a movie theatre, which offers
Landlord is willing to accept (such offer herein called a
"Third-Party Offer"), or if Landlord enters into a new

*** and (iv) no change of Tenant's permitted use has been effectuated pursuant
to Section 5.7,

-12-

in Sec-
tion 5.1

lease covering the Excluded Space or any part thereof, permitting the operation of a movie theatre thereon (a "New Lease"), Landlord shall give notice ("Refusal Notice") to Tenant of such Third-Party Offer, setting forth the terms thereof and the identity of the prospective tenant or, in the case of a New Lease, enclosing a copy of the same. Thereafter, Tenant shall have the right, exercisable in accordance with the terms of this Section 5.4(b), to lease the Excluded Space or the applicable part thereof on the same terms and conditions as set forth in Landlord's Refusal Notice to Tenant. Such right must be exercised by Tenant's giving to Landlord a written notice signed by Tenant, stating Tenant's unconditional acceptance of the terms of the Third-Party Offer or New Lease, as the case may be, which notice must be received by Landlord within 15 days after the giving of Landlord's Refusal Notice and must be accompanied by ~~(i) Tenant's payment of any security deposit, advance rentals or other sums, which pursuant to the terms of such Third-Party Offer or New Lease are required to be paid by the Tenant upon the execution of the lease of the Excluded Space and (ii)~~ counterparts of the New Lease, duly executed by Tenant,* provided that Landlord shall have furnished such counterparts to Tenant together with Landlord's Refusal Notice. If Landlord shall not receive such notice of acceptance from Tenant (accompanied by the payment**s** and executed counterparts, if required pursuant to the terms of the preceding sentence) within said 15-day period (time being of the essence), Landlord shall be free to lease the Excluded Space (or the portion thereof covered by such Third-Party Offer or New Lease) to any person on any terms not materially less favorable to Landlord than those offered to Tenant; otherwise, Landlord must again offer to lease the Excluded Space (or the portion thereof covered by such Third-Party Offer or New Lease) to Tenant pursuant to the provisions of this Section 5.4(b). It is understood and agreed that Tenant's rights and Landlord's obligations under this Section 5.4(b) shall not apply to (i) any lease of the Excluded Space or any part thereof, if such lease does not permit such space to be used as a movie theatre and (ii) any renewal or extension of the term of the lease that presently covers the Excluded Space.



\*accompanied b any security deposit required ther under,



5.5  Any provision of this Lease to the contrary notwithstanding, Tenant shall have the right without Landlord's consent to permit a portion or portions of the Demised Premises to be used for the operation of Concessions (as such term is hereinafter defined); provided, however, that if at any time during the Term, Landlord shall (i) give notice to Tenant stating that the operation of any Concession or Concessions (other than permitted Food Concessions) violates any provision contained in any Shopping Center Lease (as hereinafter defined) imposing any restrictive covenant upon Landlord or the Shopping Center and (ii) deliver to Tenant a copy of the text of such restrictive covenant and the name of the tenant in whose Shopping Center Lease the same is contained, then Tenant shall have no right to operate such Concession(s) that are violative of such restrictive covenants as long as such restrictive covenants shall be in force and effect, and if any such unpermitted Concessions are then operating in the Demised Premises, Tenant shall cause such operation to cease and desist immediately. The term "Shopping Center Lease", as used herein, means any lease or other occupancy agreement covering any space in the Shopping Center. For purposes of this Lease, "Concessions" shall mean and be

limited to the use of a part of the Demised Premises by
Tenant or its affiliated or unaffiliated concessionaires
for (a) the sale or dispensation of edibles, ~~and~~ non-alco-
holic beverages*for consumption at the Demised Premises
~~(but no booths, tables or chairs or other seating facili-~~
~~ties [other than the seats in the movie auditoriums] shall~~
~~be provided for consumers of such edibles or beverages)~~
(herein called "Food Concessions"), (b) the sale or dis-
pensation of promotional or "souvenir"-type merchandise
or literature, in all cases relating to movies or other
entertainment being presented at the Demised Premises; and
(c) the operation, sale and/or rental of video cassettes
and/or video discs in a portion of the Building not ex-
ceeding one hundred (100) square feet of floor area; pro-
vided, however, that the foregoing uses shall at all times
be ancillary and incidental to the principal use and ope-
ration of the Demised Premises as set forth in Section
5.1.  Tenant agrees that neither it nor any of its affili-
ates shall sell or dispense or knowingly permit unaffili-
ated operators of Concessions to sell or dispense edibles
or beverages for consumption off of the Demised Premises.
~~Tenant shall give Landlord prompt written notice of the~~
~~granting of any Concessions to any concessionaire that is~~
~~not affiliated with Tenant and shall furnish Landlord with~~
~~a copy of Tenant's agreement with such concessionaire.~~

*and alcoholic
beverages

$88$

5.6  During the Term and any extensions or re-
newals thereof, Landlord**shall not operate or lease space
to any third-party for the operation of a movie theatre,
within a radius of three (3) miles from the Demised Prem-
ises, without the prior written consent of Tenant.  If
Landlord shall breach the foregoing covenant contained in
this Section 5.6, then in addition to all rights and reme-
dies available to Tenant pursuant to law, Tenant may ob-
tain injunctive relief to enjoin the operation of the vio-
lative theatre.

**or any of
its affili-
ates

$88$

At any time
5.7  (a)  ~~Within sixty (60) days~~ following the
tenth (10th) anniversary of the Rent Commencement Date,
Tenant may submit in writing to Landlord a proposed change
of use for the Demised Premises, which use shall not be a
Non-Permitted Use (as defined in Section 5.7(b)).  Land-
lord shall have a period of sixty (60) days after its re-
ceipt of such submission by Tenant to accept or reject
Tenant's proposed change of use.  If, within said sixty
(60)-day period, Landlord gives Tenant written notice
("Rejection Notice") that Landlord rejects said proposed
use, then Tenant shall have the right to terminate this
Lease by giving written notice ("Termination Notice") to
Landlord not later than ten (10) days after Tenant's re-
ceipt of Landlord's Rejection Notice.  If Tenant shall
timely give such Termination Notice, this Lease and the
Term shall terminate and expire one hundred eighty (180)
days after the giving of such notice, and on the last day
of such 180-day period, Tenant shall vacate and surrender
the Demised Premises to Landlord in accordance with this
Lease as if said day were the day herein originally fixed
for the expiration of the Term, but Tenant shall remain
liable to Landlord for all unpaid rents and other charges
and for all liabilities of Tenant that accrued prior to
such termination.  Notwithstanding the foregoing, if Ten-
ant shall timely give such Termination Notice, Landlord
may nullify the same by giving written notice ("Retraction
Notice") to Tenant within ten (10) days after Landlord's
receipt of the Termination Notice, stating in such Retrac-
tion Notice that Landlord retracts its previous Rejection
Notice and accepts the change of use proposed by Tenant,

$88$

-14-

and if Landlord timely gives a Retraction Notice, Tenant's Termination Notice shall be null and void and of no force or effect ab initio.  If Landlord gives written notice to Tenant accepting Tenant's proposed change of use, or if Landlord fails to timely give a Rejection Notice, or if Landlord, having timely given a Rejection Notice, there-after timely gives a Retraction Notice, then and only then may Tenant convert the Demised Premises to the use so pro-posed by Tenant (subject to the provisions of Article 8), provided such use shall not be a Non-Permitted Use and such conversion of use shall be at Tenant's sole cost and expense, and upon commencement of such use and for all periods of the Term thereafter, (i) the Fixed Minimum Rent shall be the applicable rates set forth in Exhibit C, in-creased, in all cases, by an amount equal to the average of the annual Percentage Rent payable pursuant to Article 41 for the three Fiscal Years immediately preceding the Fiscal Year in which Tenant's proposed change of use was submitted to Landlord, and (ii) the Percentage Factor for purposes of Article 41 shall be the Percentage Factor that is then generally used in shopping center leases of prem-ises in the County of Dade, Florida, which leases permit the use to which Tenant so proposes to convert the Demised Premises.  Any dispute concerning such new Percentage Factor shall be resolved by arbitration in accordance with Article 40.  Pending the determination of the arbitrators, Tenant shall continue to pay Percentage Rent computed in accordance with Article 41 using the original Percentage Factor set forth therein; upon the determination of the arbitrators as to the new Percentage Factor, an appropri-ate adjustment, if necessary, shall be made between Land-lord and Tenant.

          (b)  The term "Non-Permitted Use" means any use which violates or otherwise is in conflict with any restrictive covenants or other use restrictions (i) con-tained in any Shopping Center Lease (as hereinafter de-fined) in effect at the time of Tenant's submission to Landlord of said proposed change of use or (ii) proposed to be contained in any Shopping Center Lease, the terms of which are being negotiated between Landlord and a prospec-tive tenant at the time of Tenant's said submission.



## ARTICLE 6

## COMPLIANCE WITH LAWS

          6.1  Tenant shall, at its own cost and expense, promptly comply with all present and future laws and ordi-nances and the orders, rules, regulations and requirements of all Federal, state, county and municipal governments, and appropriate departments, commissions, boards and of-fices thereof, and the requirements of any insurer of the Demised Premises or the Board of Fire Underwriters or any other body now or hereafter exercising similar functions, foreseen or unforeseen, ordinary as well as extraordinary, and whether or not the same shall presently be within the contemplation of the parties hereto or shall involve any change of governmental policy or require extraordinary or structural repairs, alterations, equipment or additions or any work of any kind and irrespective of the cost thereof, which may be applicable to the Demised Premises, includ-ing, without limitation, the fixtures and equipment there-of, the sidewalks, curbs and planted areas, if any, ad-joining the Demised Premises (if and to the extent such sidewalks, curbs and planted areas were constructed or

installed by Tenant or its contractors), or the purposes
to which the Demised Premises are put, or manner of use of
the Demised Premises at the commencement of or during the
term of this Lease.  The provisions of Article 8 hereof
shall apply to work to be done by Tenant pursuant to this
Article.

6.2  Tenant shall not do or permit or bring or
keep anything in the Demised Premises which shall increase
the rate of fire insurance on the Building, the Demised
Premises or any part thereof or on the property kept
therein over that in effect at the commencement of the
Term, and, should Tenant fail to do so, Tenant shall re-
imburse Landlord on demand as additional rent hereunder
for the increase on all insurance premiums thereafter pay-
able and which shall be charged because of such violation
by Tenant.  In any action or proceeding wherein Landlord
and Tenant are parties, a schedule or makeup of rates for
the Building or the Demised Premises issued by the appro-
priate fire insurance rating organization or other body
fixing the fire insurance rates shall be conclusive of the
facts therein stated and of the items and charges in the
fire insurance rate then applicable.

6.3  Tenant shall, at its own cost and expense,
obtain and keep in full force and effect any and all ne-
cessary permits, licenses, certificates or other author-
izations required in connection with the lawful and proper
use, occupancy, operation and management of the Demised
Premises; and Tenant shall indemnify and hold harmless
Landlord from and against all claims, actions, damages,
liabilities, losses, costs and expenses, including attor-
neys' fees, in connection therewith.

6.4  No abatement, diminution or reduction of
Rentals or other charges required to be paid by Tenant
pursuant to the terms of this Lease, shall be claimed by,
or allowed to, Tenant for any inconvenience, interruption,
cessation or loss of business or otherwise caused directly
or indirectly by any present or future laws, rules, re-
quirements, orders, directions, ordinances or regulations
of the Federal, state, county or municipal government, or
of any other governmental or lawful authority whatsoever,
or by priorities, rationing or curtailment of labor or
materials, or by war, civil commotion, strikes or riots,
or any matter or thing resulting therefrom, or by any
other cause or causes, nor shall this Lease be affected by
any such causes.  Subject to the provisions of Section
18.3 hereof, no diminution of the amount of space used by
Tenant caused by legally required changes in the construc-
tion, equipment, operation or use of the Demised Premises
shall entitle Tenant to any reduction or abatement of the
Fixed Minimum Rent, additional rent or any other charges
required to be paid by Tenant hereunder.


ARTICLE 7

MAINTENANCE AND REPAIRS

7.1  Tenant shall, throughout the Term and at no
expense whatsoever to Landlord, take good care of the De-
mised Premises and shall not do or suffer any waste with
respect thereto, and Tenant shall promptly make all re-
pairs to the Demised Premises of every kind and nature,
interior and exterior, structural and non-structural, or-
dinary as well as extraordinary, foreseen as well as un-

-16-

foreseen, whether necessitated by wear, tear, obsolescence or defects, latent or otherwise, necessary to keep the Demised Premises in good and lawful order and condition. When used in this Article, the term "repairs" shall include replacements, restorations and/or renewals when necessary. The necessity for and adequacy of repairs pursuant to this Article shall be measured by the standard which is appropriate for buildings of similar construction and quality to the Building, provided that Tenant shall in any event make all repairs necessary to avoid any structural damage or injury to the Building and to keep the Demised Premises in a rentable condition. All repairs made by Tenant shall be equal in quality and workmanship to the original work. Tenant will do or cause others to do all necessary shoring of foundations and walls of the Building and every other act or thing for the safety and preservation thereof which may be necessary by reason of any excavation or other building operation upon any adjoining property. The provisions and conditions of Article 8 hereof applicable to changes or alterations shall similarly apply to repairs required to be done by Tenant under this Article. Tenant shall keep and maintain all portions of the Demised Premises, including, without limitation, the fixtures and equipment thereof, the sidewalks, curbs, and planted areas adjoining the same, if any (if and to the extent such sidewalks, curbs and planted areas were constructed by Tenant or its contractors), in a clean and orderly condition, free of accumulation of ice, snow, dirt and rubbish, and Tenant shall not permit or suffer any overloading of the floors of the Building. Except as expressly provided otherwise herein, Landlord shall not be required to make any repairs, replacements or alterations in or to the Demised Premises, and Tenant assumes the full and sole responsibility for the condition, operation, repair, replacement, maintenance and management of the Demised Premises.

7.2  Tenant shall permit Landlord and the authorized representatives of Landlord to enter the Demised Premises at all reasonable times during usual business hours for the purpose of inspecting the same, curing any defaults on the part of Tenant in the making of any necessary repairs to the Demised Premises, performing any repairs or work, if any, which Landlord is obligated to perform pursuant to the express terms of this Lease, or performing any work in the Demised Premises that may be necessary to comply with any laws, ordinances, rules, orders, regulations or requirements of any public authority, or that may be necessary to prevent waste or deterioration in connection with the Demised Premises. Notwithstanding the foregoing, except in an emergency or when necessary to avoid Landlord's incurring any civil or criminal liability, Landlord shall not enter the Demised Premises to cure any default of Tenant unless Landlord shall have given Tenant notice of the default and Tenant shall not have completely cured the default within fifteen (15) days after the giving of such notice, or if the default is of a nature that the same cannot be cured within said fifteen-day period, Tenant shall not have commenced curing the default within said fifteen-day period and thereafter prosecuted the curing thereof continuously with due diligence until completion. No notice of such entry shall be necessary in the case of emergency or if such entry is necessary in order to avoid Landlord's incurring any civil or criminal liability. Any repairs or performance of other work on the Demised Premises by Landlord pursuant to this Article shall be at Tenant's sole cost

-17-

—

and expense, and any amount so paid by Landlord, plus fifteen (15%) percent for Landlord's overhead with Interest (as hereinafter defined) thereon from time of payment, shall be due on the first day of the next succeeding month as additional rent. Nothing in this Section 7.2 shall imply any duty upon the part of Landlord to cure any such defaults or to do any such work. The performance thereof by Landlord shall not constitute a waiver of Tenant's default in failing to perform the same. Except as expressly provided otherwise in this Lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Landlord by reason of inconvenience, annoyance, injury to business or other damage suffered by Tenant, arising from Landlord, Tenant or others making or failing to make any repairs or perform any work in, to or upon any portion of the Demised Premises or on account of the bringing of any materials, supplies or equipment into or through the Demised Premises during the course of any such repairs or work, and the obligations of Tenant under this Lease shall not thereby be affected in any manner whatsoever.

7.3  If Tenant shall effectively exercise its option to extend the Term for the first Renewal Term pursuant to Section 2.2, then commencing on the first day of such Renewal Term and thereafter for the balance of the Term (as the same may be further extended pursuant to Section 2.2), Landlord shall have the obligation to maintain the roof of the Demised Premises and make all necessary repairs or replacements thereto in order to keep the same free of leaks; provided, however, that Landlord shall have the right (but not the obligation) at any time during such period to install a new roof on the Demised Premises, having a quality equal to or better than the original roof that was installed by Tenant as part of the Work, and if Landlord installs such a new roof, from and after the completion of the installation of same, (i) Landlord shall have no further obligation to maintain or repair the roof of the Demised Premises and (ii) Tenant shall maintain the same and make all repairs thereto in accordance with Section 7.1.

ARTICLE 8

ALTERATIONS

8.1  Subject to the provisions of this Article, Tenant shall have the right to make such changes, alterations, additions and improvements (collectively, "alterations") in the Building as may be necessary for the initial installation of its chattels, fixtures, furnishings and equipment; after such initial installation, Tenant may from time to time during the Term, without the consent of Landlord, make alterations which are non-structural, do not constitute Prohibited Alterations and which in any instance do not cost more than $25,000. All other alterations shall be subject to the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed; provided, however, that in no event shall Landlord be required to consent to any alterations ("Prohibited Alterations") which (i)~~materially~~ affect the \*structurally exterior of the Building, (ii) affect the structure of the Building or any of its outer walls, foundation or roof, (iii) reduce the square foot area of the Building ~~or (iv) violate the provisions of any mortgage covering all or any part of the Demised Premises.~~  In connection with any and

-18-

all alterations performed hereunder, (i) if Tenant is not United Artists Communications, Inc., Tenant shall furnish to Landlord such evidence of Tenant's financial ability to assure completion as Landlord may reasonably require, (ii) Tenant shall furnish Landlord with such insurance policies as are required by Section 4.5(c) and (iii) Landlord shall have the right to require that the performance of the work be under the supervision of an architect or engineer reasonably satisfactory to it. For each proposed alteration which costs more than $50,000, or regardless of cost, affects the structure or exterior of the Building, Tenant shall submit plans and specifications showing such proposed alteration to Landlord for its* approval upon Tenant's application to Landlord for its consent to such proposed alteration, if Landlord's consent is required pursuant to the foregoing provisions of this Section; and if not required, prior to the commencement of the work, together with the estimated cost thereof, as estimated by Tenant's architect, who shall be reasonably satisfactory to Landlord. All alterations made hereunder by Tenant shall be performed in a first-class, workmanlike manner. Nothing herein contained shall be construed in any way to restrict Tenant's right to install or to make any alteration, addition or improvement in or to Tenant's own moveable trade fixtures.

*reasonable

8.2 In connection with any alteration contemplated by this Article and any repairs or restoration work contemplated by the other terms and conditions of this Lease, Tenant shall comply with all applicable laws, ordinances, orders, rules, regulations and requirements and shall, prior to commencing such work, procure all requisite permits at its own cost and expense. The originals or copies of all such approvals, authorizations, and permits shall be delivered to and retained by Landlord. Landlord will, on written request from Tenant, execute any documents necessary to be signed on its part to obtain any such permit; provided, however, that Tenant shall discharge any expense or liability of Landlord in connection therewith.

8.3 All alterations made by Tenant shall upon installation immediately be and become part of the realty and the sole and absolute property of Landlord and shall remain upon and be surrendered with the Demised Premises at the expiration or sooner termination of the Term. ~~unless and to the extent that Landlord shall, pursuant to the provisions of Section 30.2 hereof, have elected that any such alteration, addition or, improvement be removed.~~

ARTICLE 9

MECHANIC'S LIENS

9.1 Tenant shall not suffer or permit any liens to be filed against the Demised Premises or the Shopping Center or any portions thereof or against Tenant's leasehold estate therein by reason of any work, labor, services or materials done for, or supplied, or claimed to have been done for, or supplied to, Tenant or anyone holding the Demised Premises or any part thereof through or under Tenant. If any such lien shall at any time be filed as aforesaid, Tenant may contest the same in good faith but notwithstanding such contest Tenant shall, within thirty (30) days after the filing thereof, cause such lien to be released of record by payment, bond, order of a court of

-19-

competent jurisdiction, or otherwise.  In the event of
Tenant's failure to release of record any such lien within
the aforesaid period, Landlord may remove such lien by
paying the full amount thereof or by bonding or in any
other manner Landlord deems appropriate without investi-
gating the validity thereof and irrespective of the fact
that Tenant may contest the propriety or the amount there-
of.  Any amount paid or deposited by Landlord for any of
the aforesaid purposes, and all legal and other expenses
of Landlord, including reasonable attorneys' fees, in de-
fending any such action or in or about procuring the dis-
charge of such lien, with all necessary disbursements in
connection therewith, together with Interest thereon from
the date of such payments, shall be paid by Tenant to
Landlord within twenty (20) days after demand therefor.

9.2  Nothing in this Lease shall be deemed to
be, or construed in any way as constituting, the consent
or request of Landlord, expressed or implied, by inference
or otherwise, to any person, firm or corporation for the
performance of any labor or the furnishing of any materi-
als for any construction, rebuilding, alteration or repair
of or to the Demised Premises or any part thereof, nor as
giving Tenant any right, power or authority to contract
for or permit the rendering of any services or the fur-
nishing of any materials which might in any way give rise
to the right to file any lien against Landlord's interest
in the Demised Premises or the Shopping Center or any por-
tions thereof or Tenant's leasehold estate therein.

9.3  Tenant shall not create or suffer to be
created a security interest or other lien against any im-
provements, additions or other construction made by Tenant
in or to the Demised Premises or against any equipment or
fixtures installed by Tenant therein (other than Land-
lord's security interest, as hereinafter set forth) and
should any security interest or other lien be created in
breach of the foregoing, Landlord shall be entitled to
discharge the same by exercising the rights and remedies
afforded it under Section 9.1 of this Article.

ARTICLE 10

UTILITIES

10.1  Except as provided in Section 4.4 hereof,
it is expressly understood that Landlord shall not supply
to the Demised Premises any utilities or building services
of any kind or nature whatsoever.  Tenant agrees to make
its own arrangements with the public utility companies
servicing the Demised Premises for the furnishing of and
payment of all charges for electricity, sewer, gas, steam
or water, and for all other utilities used or consumed by
Tenant in the Demised Premises, including, without limita-
tion, all of the utility lines brought to the Building and
to Tenant's Readerboard Sign as part of Landlord's Work
under Section 4.4.  In no event shall Landlord be respon-
sible for charges for electricity, sewer, gas, steam or
water or any other utilities used or consumed on the De-
mised Premises by Tenant.  All meters at the premises for
the purposes of measuring Tenant's consumption of utili-
ties, including electricity, sewer, gas, steam and water,
shall be installed and maintained in good order and con-
dition by Tenant, at Tenant's sole cost and expense.
Interruption or curtailment of any such service for any



reason whatsoever shall not constitute an actual or con-
structive or partial eviction, nor entitle Tenant to any
compensation or abatement or diminution of rent.

## ARTICLE 11

### COMMON FACILITIES AND AREAS

11.1  The common facilities and areas which may
be furnished by Landlord in or near the Shopping Center
for the general use in common of tenants, their officers,
agents, employees and customers, shall include, without
limitation, any parking areas, access roads, employee
parking areas, truck way or ways, driveways, loading docks
and areas, delivery passages, package pickup stations,
pedestrian sidewalks, courts and ramps, landscaped and
planted areas, retaining walls, stairways, bus stops,
first-aid stations, lighting facilities, comfort stations
and other areas and improvements.

11.2  Landlord shall have the right to change
the areas, locations and arrangements of parking areas and
other common facilities; to construct kiosks and other
structures in the parking areas; and to grant individual
tenants the right to conduct sales in the common areas.
Landlord shall have the right to enter into, modify and
terminate easements and other agreements pertaining to the
use and maintenance of the parking areas and other common
facilities; to restrict parking by tenants, subtenants,
concessionaires, licensees and other occupants of the
Shopping Center and their officers, agents and employees
to employee parking areas; to build multi-story parking
facilities;* to construct surface or elevated parking areas
and facilities;* to change the area, level, location and
arrangement of the parking areas and other facilities
forming a part of the common areas; to establish and change
the level of parking surfaces; ~~to enforce parking charges~~
~~(by operation of meters or otherwise)~~, but in such event
the net proceeds of such charges (except for proceeds from
multi-story parking facilities constructed after the ini-
tial construction of the Shopping Center) after deducting
the cost of enforcing the same or charges thereon by any
governmental authority, shall be applied in reduction of
the cost of maintaining the common areas; to close all or
any portion of said parking areas or other common areas to
such extent as may, in the opinion of Landlord's counsel,
be necessary to prevent a dedication thereof or the ac-
crual of any rights to any person or to the public there-
in; to close temporarily any or all portions of the said
areas or facilities for repairs or to discourage non-cus-
tomer parking; and to do and perform such other acts in
and to said areas and improvements as, in the exercise of
good business judgment, Landlord shall determine to be
advisable with a view to the improvement of the conven-
ience and use thereof by tenants, their officers, agents,
employees and customers.  Landlord shall not reduce the
number of parking spaces in the parking areas of the
Shopping Center designated on <u>Exhibit B</u> as the "Restriping
Area" below the minimum number of parking spaces which ~~as, #~~
~~of the date hereof~~ are required to be maintained pursuant
to law.

#during the
Term of this
Lease and all
options hereto

11.3  The Landlord or its designee(s) shall op-
erate, manage and maintain the**common facilities and areas
in such a manner as Landlord may from time to time deter-
mine and, in connection therewith, shall have the right to

*the capital cost of construction of any such multi-story parking facility or
 elevated parking structure shall not be included in the CAM hereinafter defined
 in Article XII.                              -21-

**outdoor

expend in its sole discretion such sums as may be required
(i) to maintain and keep in good repair (including the
making of any necessary replacements) all portions of the
common facilities and areas, including, but not limited
to, paving, roads, hydrants and sprinkler equipment (in-
cluding standby charges), roofs, load-bearing walls and
columns, driveways, sidewalks, secondary fire pump facili-
ties, curbs, culverts and drainage facilities, surfacing,
landscaping, barriers, retaining walls, fences, gates,
grading, directional and Shopping Center signs (other than
signs to be maintained by any tenants of the Shopping Cen-
ter), marking of the parking area, sewer and water supply
lines and facilities, and other outside service and util-
ity lines and facilities, including electric lines, pipes,
and installations of every kind serving the buildings in
the Shopping Center (including those in premises not
leased to Tenant); (ii) to keep the common facilities and
areas reasonably free from accumulated snow, ice and re-
fuse, and open for use and fully lighted during business
hours and to comply with all governmental requirements
regarding same;& (iii) to cause the common areas thereof to
be covered by public liability insurance, protecting the
Landlord against all claims for personal injury and pro-
perty damage occurring thereon and such other coverage as
Landlord may determine, all in limits of coverage as great
as Landlord shall deem prudent or necessary, and to obtain
fire and extended and similar or related broad-form damage
coverage (such as all risk) for the Shopping Center and
the common areas thereof within such limits and with such
deductibles as selected by Landlord, and (iv) to heat,
air-condition, ventilate and provide utilities and other
services for the common areas. The said insurance pol-
icy(ies) shall be written by companies which are licensed
to write insurance in the jurisdiction where the Shopping
Center is located. If such insurance shall be carried
under a blanket policy covering other locations of Land-
lord, the pro rata premium cost attributable to this Shop-
ping Center shall be included in Common Area Maintenance
(as hereinafter defined).



11.4  The common facilities and areas shall be
subject to the exclusive control and management of Land-
lord, and Landlord shall have the right to establish, mod-
ify, change and enforce non-discriminatory rules and regu-
lations with respect to the common facilities and areas
and Tenant agrees to abide by and conform with such rules
and regulations. The right of customers to use the park-
ing facilities shall apply only while they are shopping in
the Shopping Center. Tenant agrees that it and its em-
ployees will park their trucks, delivery vehicles and
automobiles only in such of the parking areas as Landlord
from time to time designates for that purpose.

11.5  Landlord shall keep the parking area
identified on Exhibit B as the "Lighted Parking Area"
lighted during the nighttime operation of the Demised
Premises until forty-five (45) minutes after the end of
the last performance shown at the Demised Premises each
night that the Demised Premises shall be open to the pub-
lic. Tenant shall pay Landlord, as additional Rental, the
cost to Landlord of the electrical energy used to light
the Lighted Parking Area. Such cost shall be determined
by an independent electrical engineer selected by Land-
lord, who shall not be an affiliate of Landlord and whose
reasonable fees shall be paid by Tenant as additional
Rental. Landlord, at its option, may at any time install
one or more meters to measure the consumption of the elec-

-22-

trical energy used for such lighting, and if Landlord elects to install such meter(s), Tenant shall pay to Landlord, as additional Rental, the cost of the meters and the installation thereof as well as the cost of maintaining, repairing and replacing the same from time to time during the Term. Landlord may bill Tenant not more often than monthly for the costs and expenses required to be paid by Tenant pursuant to this Section 11.5, and any such bill sent to Tenant by Landlord shall be due and payable within fifteen (15) days after Tenant's receipt thereof.

## ARTICLE 12

### COMMON AREA MAINTENANCE

12.1   Tenant agrees to pay Landlord (in the manner set forth in Section 12.2), as additional rent, common area maintenance ("CAM"). The annual CAM payable by Tenant during the term of this Lease (including any partial calendar year at the beginning of the Term) shall be equal to the number of square feet of the Building Area multiplied by the CAM Factor (as hereinafter defined). The "CAM Factor" shall initially be equal to ninety cents ($0.90) for the calendar year in which the Term commences, and on the first day of each succeeding calendar year thereafter, through the expiration of the Term, the CAM Factor shall be increased by five cents ($0.05) over the CAM Factor applicable for the immediately preceding calendar year (i.e., the CAM Factor shall be $0.95 for the second calendar year, $1.00 for the third calendar year, $1.05 for the fourth calendar year, etc.). In addition to the foregoing, Tenant shall also pay to Landlord an administrative fee equal to fifteen (15%) percent of the sum of the CAM payable by Tenant in any calendar year.

12.2   The CAM for any calendar year of the Term shall be paid in advance in monthly installments on the first day of each calendar month. For any partial calendar year in which this Lease commences or terminates the CAM shall be prorated.

## ARTICLE 13

### REAL ESTATE TAXES

13.1   If the Demised Premises shall be separately assessed and taxed, Tenant shall pay in each year during the term of this Lease, as additional rent, all Impositions (as hereinafter defined) which shall be levied or assessed upon the Demised Premises.

13.2   If the Demised Premises shall not be separately assessed and taxed, then and in such event, during the period that the Demised Premises (including the Building or any portion of the Building during the period that the same is being constructed) is taxed together with other land, buildings and improvements, Tenant shall pay to Landlord as additional rent, that portion of such Impositions which shall be levied upon all of the land, buildings and improvements covered by the tax bill;

multiplied by a fraction, the numerator of which is the number of square feet of the Building Area as of the last day of the period covered by such tax bill and the denominator of which is the total square foot leasable ground floor area of all buildings and improvements covered by the tax bill as of the last day of the period covered by such tax bill.  If the Demised Premises shall not be separately assessed and taxed, Tenant shall have the right, exercisable upon prior written notice to Landlord, to make application for a separate assessment of the Demised Premises, and Landlord, at no expense to Landlord, shall reasonably cooperate with Tenant in obtaining such separate assessment.

13.3  In addition to (but not in duplication of) the Impositions payable by Tenant on the Demised Premises pursuant to the provisions of either Section 13.1 or 13.2 above, Tenant shall pay its proportionate share of all such Impositions assessed or levied against all portions of the Shopping Center other than the Demised Premises for each calendar year, which shall be equal to the product obtained by multiplying the Impositions for each calendar year by a fraction, the numerator of which is the number of square feet of the Building Area and the denominator of which is the number of square feet of gross leaseable area in the Shopping Center as of the date the Impositions for such calendar year are assessed or levied ("Tenant's Proportionate Share").

13.4  As used herein, the term "Impositions" shall mean the aggregate of:  (a) all real estate taxes, assessments, levies, fees, water and sewer rents and charges, and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind or nature whatsoever (including, without limitation, assessments for public improvements or benefits and interest on unpaid installments thereof), together with any interest and penalties thereon, which, from time to time, may be levied, assessed or imposed or become liens upon or arise out of the use, occupancy or possession of (i) all or any part of the Demised Premises, or the Shopping Center (land, buildings, leasehold improvements, betterments and other permanent improvements), as the case may be, (ii) the Fixed Minimum Rent, additional rent or other charges payable by Tenant hereunder, or payable to Tenant from any assignee or subtenant hereunder, or any franchises as may be appurtenant to the use of the Demised Premises or (iii) this Lease or the leasehold estate created hereby; (b) any gross receipts, gross income, rental income or similar taxes imposed or levied upon, assessed against or measured solely by the Fixed Minimum Rent, additional rent or other charges to be paid by Tenant hereunder and without regard to other income of Landlord; (c) all sales and use taxes which may be levied or assessed against or be payable by Landlord or Tenant on account of the leasing or use of all or any part of the Demised Premises; and (d) all other taxes and charges in the same or similar categories.  The term "Impositions" shall not, however, include inheritance, estate, succession, transfer, gift, franchise, corporation income or profit tax imposed upon Landlord; provided, however, that if at any time during the term of this Lease the methods of taxation prevailing at the commencement of the term of this Lease shall be altered so that in addition to or in lieu of or as a substitute for the whole or any part of the taxes now levied, assessed or imposed on real estate as such there shall be levied, assessed or imposed (i) a

tax on the rents received from the Shopping Center; (ii) a license fee measured by the rents receivable by Landlord from the Shopping Center; or (iii) a tax or license imposed upon Landlord which is otherwise measured by or based in whole or in part upon the Shopping Center or any portion thereof, then such tax or fee shall be included in the computation of Impositions, computed as if the amount of such tax or fee so payable were that part due if the Shopping Center were the only property of Landlord subject thereto.

    13.5  The Impositions required to be paid hereunder by Tenant shall constitute additional rent, and shall be paid in monthly installments on the first day of each calendar month.  If, on the first day of any calendar month the amount of Impositions payable during the then current tax year shall not have been determined by the taxing authority, then the Impositions then payable by Tenant shall be estimated by Landlord based on the prior quarterly or semi-annual or annual tax bill.  After receipt by Landlord of the tax bills for each tax year, Landlord will certify to Tenant the Impositions and the amount due from Tenant.  If the amount of such monthly payments paid by Tenant exceeds the actual amount due, the overpayment shall be credited on Tenant's next succeeding payment if Tenant is not in default hereunder.  If the amount of such monthly payments paid by Tenant shall be less than the actual amount due, Tenant shall pay to Landlord the difference between the amount paid by Tenant and the actual amount due within twenty (20) days after demand from Landlord.  Landlord shall have the option of billing Tenant in quarterly instead of monthly installments, in which event Tenant shall pay the amount billed within twenty (20) days of the date Landlord renders said bill. If the Term of this Lease shall commence on other than the first day of the fiscal or other period for which Impositions are payable (a "Tax Period"), Impositions for the Tax Period in which this Lease commences shall be prorated; and if this Lease shall expire on other than the last day of a Tax Period, Impositions for the Tax Period in which this Lease expires shall be prorated.

    13.6  Landlord shall have the right but not the obligation, if permitted by law, to make installment payments of any assessments levied against the Shopping Center and in such event, Impositions shall be computed upon the installments and interest thereon paid by Landlord in each tax year.  Landlord shall have the sole, absolute and unrestricted right, but not the obligation, to contest the validity or amount of any tax by appropriate proceedings, and if Landlord shall voluntarily institute any such contest it shall have the sole, absolute and unrestricted right to settle any negotiation, contest, proceeding or action upon whatever terms Landlord may, in its sole discretion, determine.  In the event Landlord receives any refund of such Impositions (and provided Tenant is not then in default under this Lease) Landlord shall credit such portion of the refund as shall be allocable to the Tenant's Proportionate Share of Impositions (less costs, expenses and attorney's fees) against the next succeeding payments of Impositions due from Tenant.

    13.7  In the event of any dispute under this Article, Tenant shall pay Impositions in accordance with the applicable bill or statement, and such payment shall be without prejudice to Tenant's position.  If the dispute shall be determined in Tenant's favor, by agreement or

-25-

otherwise, Landlord shall pay to Tenant the amount of Ten-
ant's overpayment resulting from compliance with such bill
or statement.  Any such bill or statement shall be deemed
binding and conclusive if Tenant fails to object thereto
within (30) days after receipt thereof.  With respect to
any provision of this Lease requiring a determination of
floor area, leaseable area, gross leaseable area or any
similar area, the determination of Landlord's architect
shall be conclusive and binding upon the parties hereto.

13.8   Tenant shall pay (or reimburse Landlord
upon demand if the same are levied against Landlord or
the Shopping Center) before delinquency, any and all ad
valorem or other taxes, assessments, license fees and
public charges, of whatever kind or nature, levied or
assessed during the Term by any governmental authority
against Tenant's business in the Demised Premises, Ten-
ant's stock of merchandise, fixtures, furnishings, fur-
niture, equipment, supplies, signs and any other personal
property therein.

13.9  Anything herein to the contrary notwith-
standing, if the holder of any mortgage affecting the fee
title to the Demised Premises or the lessee's interest
under any lease to which this Lease is subordinate shall
require monthly or other periodic escrow deposits of any
Impositions, the Tenant agrees to pay to the Landlord, as
additional rent, any amount required by such mortgagee to
initially establish the escrow fund within ten (10) days
after demand therefor from Landlord and Tenant shall
thereafter pay monthly or at such other periods, simul-
taneously with the payment of Fixed Minimum Rent, as ad-
ditional rent, an amount equal to appropriate periodic
percentage of Tenant's share of such Impositions, as esti-
mated by Landlord as being due and payable from Tenant
during the next succeeding period.  If at any time the
amount of such Impositions shall be increased or Landlord
receives information that the same will be increased
and/or if the aforesaid deposits would not be sufficient
to pay such Impositions, said deposits shall thereafter be
immediately increased so that Landlord shall have adequate
amounts to pay such Impositions as the same become due and
payable.

ARTICLE 14

TAX APPEALS AND CONTESTS

14.1   Tenant shall have the right, at its cost
and expense, to contest the amount or validity, in whole
or in part, of any Imposition of any kind by appropriate
proceedings diligently conducted in good faith, but no
such contest shall be carried on or maintained by Tenant
after the time limit for the payment of any Imposition
unless the Tenant, at its option:  (a) shall pay the
amount involved under protest; (b) shall procure and main-
tain a stay of all proceedings to enforce any collection
of any Imposition, together with all penalties, interest,
costs and expenses, by a deposit of a sufficient sum of
money, or by such other undertaking, as may be required or
permitted by law to accomplish such stay; or (c) shall
deposit with Landlord or any superior lessor or mortgagee
designated by Landlord, as security for the performance by
the Tenant of its obligations hereunder with respect to
such Impositions, an amount equal to such contested amount
or such reasonable security as may be demanded by the

-26-

~~Landlord or any such superior lessor or mortgagee to in-~~
sure a payment of such contested Imposition and all penal-
ties, interest, costs and expenses which may accrue during
the period of the contest.  Upon the termination of any
such proceedings, it shall be the obligation of Tenant to
pay the amount of such Imposition or part thereof, as fi-
nally determined in such proceedings, the payment of which
may have been deferred during the prosecution of such pro-
ceedings, together with any costs, fees (including counsel
fees), interest, penalties or other liabilities in connec-
tion therewith, whereupon the Landlord shall return to the
Tenant, without interest thereon, all amounts, if any,
held by or on behalf of Landlord which were deposited by
the Tenant in accordance with the foregoing provisions of
~~this Article.~~



14.2   In the event the Demised Premises shall be
separately assessed and taxed as provided in Section 13.1,
Tenant shall have the right, at its sole cost and expense,
to seek a reduction in the valuation of the Demised Prem-
ises as assessed for tax purposes and to prosecute any
action or proceeding in connection therewith.  Provided no
Event of Default has occurred hereunder, Tenant shall be
authorized to collect any tax refund of any tax paid by
Tenant obtained by reason thereof and to retain the same.

14.3   Landlord agrees that whenever Landlord's
cooperation is required in any of the proceedings brought
by Tenant as aforesaid, Landlord will reasonably cooperate
therein, provided same shall not entail any cost, liabil-
ity or expense to Landlord and Tenant will pay, indemnify
and save Landlord harmless for and from, any and all lia-
bilities, losses, judgments, decrees, costs and expenses
(including reasonable attorneys' fees and expenses) in
connection with any such contest and will, promptly after
the final settlement, fully pay and discharge the amounts
which shall be levied, assessed, charged or imposed or be
determined to be payable therein or in connection there-
with, and Tenant shall perform and observe all acts and
obligations, the performance of which shall be ordered or
decreed as a result thereof.  No such contest shall sub-
ject Landlord or any superior lessor or mortgagee to the
risk of any material civil liability or the risk of any
criminal liability, and Tenant shall give such reasonable
indemnity or security to Landlord, any superior lessor and
any mortgagee as may be demanded by any of them to insure
compliance with the foregoing provisions of this Article.


ARTICLE 15

MERCHANTS ASSOCIATION

15.1   Tenant shall not be obligated to become a
member of any Merchants Association now existing or which
may hereafter be organized in the Shopping Center.  Never-
theless, if requested in writing from time to time by
Landlord, (a) Tenant shall permit such Merchants Associa-
tion to hold its meetings at the Demised Premises from
time to time during the Term, without charge, provided,
however, that Tenant shall not be required to make the
Demised Premises available for such meetings more than two
(2) times per month; and (b) Tenant shall run a children's
matinee feature in the Demised Premises at least once a
month for which there shall be no charge for admission,
provided that Tenant shall be reimbursed by the Merchants
Association for the film rental charges for such matinee

feature and wages paid by Tenant to its regular staff of employees operating the Demised Premises during such matinee feature or meeting.

## ARTICLE 16

### INTENTIONALLY DELETED

## ARTICLE 17

### INDEMNITY AND INSURANCE

17.1   Tenant agrees to indemnify and hold harm-less Landlord, its officers, directors, partners, employ-ees, agents and any mortgagee or master lessor of the Shopping Center, from and against any and all claims, ac-tions, damages, liabilities, losses, costs and expenses, including attorneys' fees, that (i) arise out of or in connection with the construction, possession, use, oc-cupancy, management, repair, maintenance or control of the Demised Premises or any part thereof or any street, alley, sidewalk, curb, parking area, passageway, driveway or space adjacent thereto, or any portion thereof or any other part of the Shopping Center used by Tenant, or (ii) arise out of or in connection with any act or omission of Tenant or Tenant's agents, employees, contractors, conces-sionaires, licensees, invitees, subtenants or assignees, or (iii) arise out of any default, breach, violation or non-performance of this Lease or any provision hereof by Tenant, or (iv) arise out of injury to person or property or loss of life sustained in or about the Demised Premises or any part thereof or any street, alley, sidewalk, curb, parking area, passageway, driveway or space adjacent thereto.  Tenant shall, at its own cost and expense, de-fend any and all actions, suits and proceedings which may be brought against, and Tenant shall pay, satisfy and dis-charge any and all judgments, orders and decrees which may be made or entered against, Landlord, its officers, direc-tors, partners, employees, agents or any mortgagee or mas-ter lessor of the Shopping Center with respect to, or in connection with, any of the foregoing.  The comprehensive general liability coverage maintained by Tenant pursuant to this Lease shall specifically insure the contractual obligations of Tenant as set forth in this Article and/or as provided in this Lease.

17.2   Tenant shall obtain and provide, on or be-fore the earlier of the Rent Commencement Date or Tenant's entering the Demised Premises for any purpose, and keep in force at all times thereafter, the following insurance coverages with respect to the Demised Premises:

(a)  Comprehensive General Liability Insur-ance, with contractual liability endorsement and Broad Form CGL endorsement, relating to the Demised Premises and their appurtenances on an occurrence basis ~~with a minimum~~ and ~~limit of liability with respect to each occurrence of Five Million ($5,000,000) Dollars for~~ bodily injury, personal injury, death and property damage, and ~~such insurance shall be extended to include~~ Fire Legal Liability ~~with a limit of Five Million ($5,000,000) Dollars;~~ with liability coverage which is standard in overall insurance policies maintained by United Artists Communications, Inc.

(b)  Fire and Lightning, Extended Coverage, Vandalism and Malicious Mischief, Flood (if required by ~~Landlord, any mortgagee or~~ governmental authority), War

-28-

*at no additional charge
**in the standard amount covered by policies of insurance
of United Artists Communications, Inc.

Risk (if obtainable*) Insurance and Special Extended Cover-
age Insurance ("All Risk")* ~~in an amount adequate to cover~~
~~the "full replacement cost" of all improvements and bet-~~
~~terments, personal property, decorations, trade fixtures,~~
~~furnishings, equipment, and all contents therein. Such~~
"full replacement cost" shall be determined from time to
time, but not more often than once every five (5) years
(or more often if and to the extent required by any of
Landlord's mortgagees), at Landlord's request, by an ap-
praiser, engineer, architect or contractor designated by
Landlord, at Tenant's sole cost and expense. No failure
on Landlord's part to request any such determination shall
relieve Tenant of any of its obligations hereunder. As
long as the Tenant hereunder is United Artists Communica-
tions, Inc., the insurance to be maintained pursuant to
this subparagraph (b) may provide for a deductible in an
amount reasonably determined by Tenant, consistent with
~~prudent insurance practices;~~

(c)   Insurance written on a replacement
cost basis, covering all equipment used in connection with
the heating, air conditioning and ventilation of the
Building and similar equipment, if any, in or adjoining,
above or beneath the Demised Premises;

(d)   If the Tenant hereunder is not United
Artists Communications, Inc., rent insurance with the
standard extended coverage endorsement attached to rent
insurance policies covering property similar to the De-
mised Premises in an amount equal to the aggregate of the
Rentals and all other charges payable by Tenant pursuant
to this Lease for a period of two (2) years, except that
Tenant may at its election provide such insurance by an
appropriate endorsement to its business interruption
insurance policy.  In the event that the Building to be
constructed on the Demised Premises shall be destroyed or
seriously damaged, Tenant shall assign to Landlord so much
of the proceeds of such insurance as shall equal the Rent-
als and all other charges payable by Tenant (as estimated
by Landlord) for a period of two (2) years, such amount to
be held by Landlord and applied on account of such Rentals
and other charges until the restoration of the Demised
Premises, but Tenant shall not be released of its obliga-
tions hereunder;

(e)   Workmen's Compensation Insurance cov-
ering all persons employed, directly or indirectly, in
connection with any finish work performed by Tenant or any
repair or alteration authorized by this Lease or consented
to by Landlord, and all employees and agents of Tenant
with respect to whom death or bodily injury claims could
be asserted against Landlord or Tenant, as required by the
law of the State where the Shopping Center is located;

(f)   Product Liability Insurance for mer-
chandise offered for sale or lease from the Demised Prem-
ises, including ~~(if this Lease covers premises in which~~
~~food and/or beverages are sold and/or consumed)~~ coverage
for liability arising out of consumption of food and/or
alcoholic beverages (if applicable to Tenant's business)
on or obtained at the Demised Premises, ~~of not less than~~
~~One Million Dollars ($1,000,000.00)~~ for personal injury or
death ~~and not less than Three Hundred Thousand Dollars~~
~~($300,000.00)~~ for property damage;* and

**in standard liability amounts as contained in policies of insurance
of United Artists Communications, Inc.

-29-

(g)   Such other insurance, and in such
amounts that may from time to time be reasonably requested
by Landlord, against other insurable hazards which at the
time are reasonably available and commonly insured against
in the case of premises or buildings similarly situated,
with due regard to the height and the type of the Build-
ing, its construction, use and occupancy.

17.3   All of the aforesaid insurance except the
Workmen's Compensation Insurance required by subparagraph
(e) above shall be written in the name of Landlord (and
any designee(s) of Landlord), Tenant and the holder of any
mortgage to which this Lease is subordinate, if required
by such mortgagee, and shall be issued in form and with
endorsements reasonably satisfactory to Landlord by one or
more prime rated insurance companies duly licensed to do
business as an admitted carrier in the State where the
Shopping Center is located and subject to Landlord's rea-
sonable approval.  All such insurance may be carried under
a blanket policy covering the Demised Premises and any
other of Tenant's theatres.  All such insurance shall
contain endorsements that:  (i) such insurance may not
be cancelled, reduced in coverage or amount or otherwise
materially amended with respect to Landlord (or its desig-
nees) or any mortgagee named as an insured thereunder ex-
cept upon thirty (30) days prior written notice to Land-
lord (and any such designees) and/or any such mortgagee by
the insurance company; (ii) Tenant shall be solely respon-
sible for payment of premiums and that Landlord (or its
designees) shall not be required to pay any premium for
such insurance; and (iii) in the event of payment of any
loss covered by such policies, Landlord (or its designees)
shall be paid first by the insurance company for Land-
lord's loss, subject to the prior rights, if any, of any
mortgagee.  The minimum limits of the comprehensive gen-
eral liability policy of insurance shall in no way limit
or diminish Tenant's liability hereunder.  Tenant shall
deliver to Landlord at least thirty (30) days prior to the
time such insurance is first required to be carried by
Tenant, and thereafter at least thirty (30) days prior to
the expiration of any such policy or policies, either a
duplicate original or a certificate of insurance on all
policies procured by Tenant in compliance with its obli-
gations hereunder, together with evidence satisfactory to
Landlord of the payment of the premiums therefor.  If Ten-
ant fails to obtain and provide any or all of the afore-
said insurance, then Landlord may, but shall not be re-
quired to, purchase such insurance on behalf of Tenant and
the cost of such insurance shall be payable by Tenant as
additional rent with the next installment of Fixed Minimum
Rent.

17.4   The minimum limits of the comprehensive
general liability policy of insurance shall be subject to
increase at any time, and from time to time, after the
commencement of the fifth (5th) year of the Term if Land-
lord shall deem same necessary for adequate protection;
provided, however, that Landlord may not require such
increase more often then once every five years during the
Term.  Within thirty (30) days after demand therefor by
Landlord, Tenant shall furnish Landlord with evidence of
Tenant's compliance with such demand.

17.5   Tenant shall not carry separate or addi-
tional insurance, concurrent in form and contributing, in
the event of any loss or damage to the Demised Premises,
with any insurance required to be obtained by Tenant under

this Lease, unless such separate or additional insurance shall comply with and conform to all of the provisions and conditions of this Article.  Tenant shall promptly give notice to Landlord of such separate and additional insurance and deliver the original or a certificate of such policies to Landlord.

17.6  Tenant shall cooperate with Landlord in connection with the collection of any insurance monies that may be due in the event of a loss, and Tenant shall execute and deliver to Landlord such proofs of loss and other instruments which may be required for the purpose of obtaining the recovery of any such insurance monies.

17.7  Landlord and Tenant each hereby release the other from any and all liability or responsibility (to the other or any one claiming through or under them by way of subrogation or otherwise) under fire and extended coverage or supplementary contract casualties, if such fire or other casualty shall have been caused by the fault or negligence of the other party, or anyone for whom such party may be responsible; provided, however, that this release shall be applicable and in force and effect only with respect to loss or damage occurring during such time as the releasor's policies shall contain a clause or endorsement to the effect that any such release shall not adversely affect or impair said policies or prejudice the rights of the releasor to recover thereunder.  Each of Landlord and Tenant agrees that its policies will include such a clause or endorsement so long as the same shall be obtainable without extra cost, or if such cost shall be charged therefor, so long as the other party pays such extra cost.  If extra cost shall be chargeable therefor, each party shall notify the other party thereof and of the amount of the extra cost, and the other party shall be obligated to pay the extra cost unless, within ten (10) days after such notice, it elects not to be obligated to do so by written notice to the original party.  If such clause or endorsement is not available, or if either party should not desire the coverage at extra cost to it, then the provisions of this Article shall not apply to the policy or policies in question.

ARTICLE 18

FIRE AND OTHER CASUALTY

18.1  If all or any part of the Demised Premises shall be damaged or destroyed by fire or other casualty, whether or not covered by insurance, Tenant shall promptly repair restore, replace, or rebuild the same (hereinafter called the "Repair Work") to substantially the condition and character it was in immediately prior to such damage or destruction.  Notwithstanding the foregoing, if at any time when there shall be two (2) or less years of the Term remaining, the Demised Premises shall be damaged by fire or any other cause to such an extent that the cost of restoration, as estimated by an architect or engineer reasonably satisfactory to Landlord and Tenant, will equal or exceed fifty (50%) percent of the replacement value of the Demised Premises in its condition just prior to the occurrence of the damage, either party may, no later than the forty-fifth (45th) day following the damage, give the other a notice stating that it elects to cancel this Lease on the tenth (10th) business day following the date on which such notice is given and in the event of the giving

of such notice, this Lease shall be deemed cancelled and the Term shall expire on the date set forth in said notice; Tenant shall surrender the possession of the Demised Premises on said date; the Rentals and all other charges required hereunder to be paid by Tenant shall be apportioned as of said date and any amounts paid for any period beyond said date shall be repaid to Tenant; and Landlord shall be entitled to receive and retain all proceeds of insurance payable in connection with such damage; and in the event of Tenant's failure to carry such insurance, Tenant shall pay therewith to Landlord a sum equal to the estimated cost of restoration. Landlord shall not have the right to terminate this Lease as hereinabove provided if Tenant has any option to renew this Lease and Tenant promptly exercises such option. If this Lease is not cancelled as aforesaid, Tenant shall restore the Demised Premises subject to and in accordance with the provisions of this Article 18, and the Repair Work shall be done and completed with reasonable promptness.

18.2  In the event Tenant shall be obligated to perform Repair Work as provided in Section 18.1, then provided Tenant is not in default under any of the terms, conditions or covenants of this Lease and subject to the rights of any mortgagee of the Shopping Center, the net amount of the insurance monies, if any, collected by Landlord on account of such damage or destruction shall be applied by Landlord in the following manner:

(a)  there shall be paid to Tenant from said insurance monies such part thereof as shall equal ninety (90%) percent of the cost to Tenant of making such temporary repairs or doing such other work as, in Tenant's opinion, may be necessary in order to protect the Demised Premises pending the performance of the Repair Work;

(b)  there shall be paid to Tenant from said insurance monies such part thereof as shall equal ninety (90%) percent of the cost to Tenant of the Repair Work; and

(c)  the remaining ten (10%) percent of the cost to Tenant of the Repair Work shall be paid to Tenant promptly after the Landlord shall have been furnished proof reasonably satisfactory to it that the Repair Work has been fully performed and paid for or will be fully paid for by application of said remaining monies.

Landlord and Tenant agree that insurance monies shall be paid by the insurers to Landlord to be held in trust for the purposes hereof; provided, however, that Landlord shall be entitled to reimbursement from such monies for any costs and expenses paid or incurred in the collection of such monies. In the event that the cost of such Repair Work shall exceed the net amount of insurance monies collected by Landlord, Tenant shall pay the deficiency. If any of the insurance monies paid to Landlord shall remain after the completion of the Repair Work, the excess shall be retained by Landlord.

18.3  Payment to Tenant pursuant to subparagraphs (a) or (b) of Section 18.2 from such insurance monies collected by Landlord shall be made by Landlord to Tenant from time to time as the Repair Work progresses, in amounts equal to ninety (90%) percent of the cost of labor

and material incorporated into and used in the Repair Work, and builders', architects' and engineers' fees, and other charges in connection with such Repair Work, upon delivery to Landlord of a certificate of Tenant's architect in charge of the Repair Work, who shall be reasonably satisfactory to Landlord, certifying (i) that the amount so to be paid to Tenant is payable to the Tenant in accordance with the provisions of this Article and that such amount is then due and payable by Tenant or has theretofore been paid by Tenant; (ii) that the Repair Work has been done substantially in accordance with the plans and specifications therefor; (iii) that the sum requested when added to all sums previously paid out under Section 18.2 for the Repair Work does not exceed the value of the Repair Work done to the date of such certificate; and (iv) the estimated cost of completing the Repair Work, in such reasonable detail as the Landlord may require, and that in the opinion of such architect the remaining amount of such insurance monies will be sufficient upon completion of the Repair Work to pay for the same in full.

18.4  If the estimated cost of the Repair Work shall exceed the aggregate amount of insurance monies collected by Landlord on account of such damage or destruction, Tenant shall, prior to the commencement of any Repair Work, furnish to Landlord a duplicate copy of the contract for such work, which contract shall be in assignable form and made with a reputable and responsible builder approved by Landlord (which approval shall not be unreasonably withheld), together with a duly executed and acknowledged assignment of said contract to Landlord, by its terms to become effective upon termination of this Lease or upon re-entry by Landlord following any default by Tenant.  Such assignment shall also include the benefit of all payments made by Tenant on account of such contract, including payments made prior to the effective date of such assignment.

18.5  The provisions and conditions of Article 8 hereof shall similarly apply (except as otherwise provided in this Article) to the performance of the Repair Work by or on behalf of Tenant.

18.6  If the net amount of insurance monies, if any, collected by Landlord on account of such damage or destruction shall be insufficient to pay the entire cost of the Repair Work (as estimated by Tenant's architect, who shall be reasonably satisfactory to Landlord, which estimate shall be delivered to Landlord before the commencement of the Repair Work), Tenant shall, prior to commencing the Repair Work, furnish to Landlord such evidence of Tenant's financial ability to assure completion of the Work as Landlord shall reasonably require or deposit with Landlord an amount of money equal to such insufficiency, which shall be disbursed to Tenant in accordance with the provisions of this Article.

18.7  In the event of any such damage or destruction by fire or other casualty, the provisions of this Lease shall be unaffected and Tenant shall remain and continue to be liable for the full payment of Rentals and all other charges required hereunder to be paid by Tenant, as though no damage by fire or other casualty had occurred; except, however, to the extent that payments are received by Landlord from the rental insurance under Section 17.2(d) hereof, and subject, however, to the provisions of Section 18.1 hereof relating to a damage or destruction

occurring within the last two (2) years of the Term.  Tenant expressly waives any additional rights it may otherwise have under any law or statute by reason of damage or destruction of the Demised Premises by fire or any other cause, and agrees that the provisions of this Article 18 shall govern and control in lieu thereof.

18.8  Landlord and Tenant each agree that they will cooperate with each other, to such extent as such other party may reasonably require, in connection with the prosecution or defense of any action or proceeding arising out of, or for the collection of, any insurance monies that may be due in the event of any loss or damage, and that they each will execute and deliver to the other party such instruments as may be required to facilitate the recovery of any insurance monies.

18.9  Tenant agrees to give prompt notice to Landlord with respect to all fires and other casualties occurring in, on, at or about the Demised Premises during the term of this Lease.


ARTICLE 19

CONDEMNATION

19.1  If, at any time during the Term, title to the whole or materially all of the Demised Premises shall be taken by the exercise of the right of condemnation or eminent domain, or by agreement between Landlord and those authorized to exercise such right in the case of an imminent, threatened or pending condemnation, this Lease shall terminate and expire on the date of such taking, and the Rentals and other charges to be paid by Tenant hereunder shall be apportioned and paid to the date of such taking.  For the purpose of this Lease, "materially all of the Demised Premises" shall be deemed to have been taken if fifty (50%) percent or more of the Demised Premises or thirty (30%) percent or more of the areas of the Shopping Center other than the Demised Premises is taken.

19.2  If at any time during the Term, title to less than the whole or materially all of the Demised Premises shall be taken as aforesaid, Tenant shall restore the Demised Premises to an architecturally complete unit with reasonable promptness (such restoration work being hereinafter referred to as "Repair Work"); but such work shall not exceed the scope of the work to be done by Tenant in originally constructing the Building.  If title to less than the whole or materially all of the Demised Premises shall be taken as aforesaid, this Lease shall continue to be in full force and effect, except that thereafter the Rentals shall be reduced pro rata on the basis of the number of square feet in the Building remaining as compared to the number of square feet in the Building prior to the taking.

19.3  The entire award or purchase price for any taking under the power of condemnation or eminent domain, whether for the whole or a part of the Demised Premises, shall belong to and be the sole property of Landlord and, except as set forth hereinafter, Tenant waives all right to make claim for such damages, whether such damages shall be awarded as compensation for diminution in value to the leasehold or to the fee of the Demised Premises; provided, however, that Landlord shall not be entitled to any award

-34-

made to Tenant for loss of or damage to Tenant's trade
fixtures, the right to make claim for which is hereby ex-
pressly reserved to Tenant.

19.4   In the event Tenant shall be obligated to
perform Repair Work as provided in Section 19.2, then pro-
vided Tenant is not in default under any of the terms,
conditions or covenants of this Lease and subject to the
rights of any mortgagee of the Shopping Center, the net
amount of the award or purchase price, if any, collected
by Landlord on account of such taking under the power of
condemnation or eminent domain shall be applied by Land-
lord in the following manner:

(a)   there shall be paid to Tenant from said
monies such part thereof as shall equal ninety (90%)
percent of the cost to Tenant of making such tempo-
rary repairs or doing such other work as, in Tenant's
opinion, may be necessary in order to protect the
Demised Premises pending the performance of the Re-
pair Work;

(b)   there shall be paid to Tenant from said
insurance monies such part thereof as shall equal
ninety (90%) percent of the cost to Tenant of the
Repair Work; and

(c)   the remaining ten (10%) percent of the cost
to Tenant of the Repair Work shall be paid to Tenant
promptly after the Landlord shall have been furnished
proof reasonably satisfactory to it that the Repair
Work has been fully performed and paid for or will be
fully paid for by application of said remaining mon-
ies.

Landlord and Tenant agree that such monies shall be paid
to Landlord and upon such taking be held in trust for the
purposes hereof; provided, however, that Landlord shall be
entitled to reimbursement from such monies for any costs
and expenses paid or incurred in the collection of such
monies.   In the event that the cost of such Repair Work
shall exceed the net amount of the award or purchase price
collected by Landlord, Tenant shall pay the deficiency.
If any such monies paid to Landlord shall remain after the
completion of the Repair Work, the excess shall be re-
tained by Landlord.

19.5   Payment to Tenant pursuant to subpara-
graphs (a) or (b) of Section 19.4 from such monies col-
lected by Landlord shall be made by Landlord to Tenant
from time to time as the Repair Work progresses, in
amounts equal to ninety (90%) percent of the cost of labor
and material incorporated into and used in the Repair
Work, and builders', architects' and engineers' fees, and
other charges in connection with such Repair Work, upon
delivery to Landlord of a certificate of Tenant's archi-
tect in charge of the Repair Work, who shall be reasonably
satisfactory to Landlord, certifying (i) that the amount
so to be paid to Tenant is payable to the Tenant in ac-
cordance with the provisions of this Article and that such
amount is then due and payable by Tenant or has thereto-
fore been paid by Tenant; (ii) that the Repair Work has
been done substantially in accordance with the plans and
specifications therefor; (iii) that the sum requested when
added to all sums previously paid out under Section 19.4
for the Repair Work does not exceed the value of the Re-
pair Work done to the date of such certificate; and (iv)

-35-

the estimated cost of completing the Repair Work, in such reasonable detail as the Landlord may require, and that in the opinion of such architect the remaining amount of such monies will be sufficient upon completion of the Repair Work to pay for the same in full.

19.6  If the estimated cost of the Repair Work shall exceed the aggregate amount of monies collected by Landlord on account of such taking under the power of condemnation or eminent domain, Tenant shall, prior to the commencement of any Repair Work, furnish to Landlord a duplicate copy of the contract for such work, which contract shall be in assignable form and made with a reputable and responsible builder approved by Landlord (which approval shall not be unreasonably withheld), together with a duly executed and acknowledged assignment of said contract to Landlord, by its terms to become effective upon termination of this Lease or upon re-entry by Landlord following any default by Tenant.  Such assignment shall also include the benefit of all payments made by Tenant on account of such contract, including payments made prior to the effective date of such assignment.

19.7  The provisions and conditions of Article 8 hereof shall similarly apply (except as otherwise provided in this Article) to the performance of the Repair Work by or on behalf of Tenant.

19.8  If the net amount of monies, if any, collected by Landlord on account of such taking under the power of condemnation or eminent domain, shall be insufficient to pay the entire cost of the Repair Work (as estimated by Tenant's architect, who shall be reasonably satisfactory to Landlord, which estimate shall be delivered to Landlord before the commencement of the Repair Work), Tenant shall, prior to commencing the Repair Work, furnish to Landlord such evidence of Tenant's financial ability to assure completion of the Work as Landlord shall reasonably require.

19.9  If at any time during the Term, the whole or any part of Tenant's interest under this Lease shall be taken or condemned by any competent authority for its or their temporary use or occupancy, this Lease shall not terminate by reason thereof and Tenant shall continue to pay, in the manner and at the time herein specified, the full amount of the Rentals and all other charges payable by Tenant hereunder, and, except only to the extent that Tenant may be prevented from so doing pursuant to the terms of the order of the condemning authority, to perform and observe all of the other terms, covenants, conditions and obligations hereof upon the part of Tenant to be performed and observed, as though such taking had not occurred.  In the event of any such taking as in this Section 19.9 referred to, Tenant shall be entitled to receive the entire amount of any award made for such taking, whether paid by way of damages, rent or otherwise, so long as there shall be no event of default hereunder on Tenant's part; provided, however, that if such period of temporary use or occupancy shall extend beyond the expiration of the Term, Landlord shall be entitled to immediately receive and retain the amount of the award attributable to the period of time subsequent to the expiration of the Term.  Tenant agrees that, upon the termination of any such period of temporary use or occupancy, it will, at its sole cost and expense, restore the Demised Premises, as nearly as may be practicable, to the condition in which the same were immediately prior to such taking.

ARTICLE 20

ACCESS TO DEMISED PREMISES

20.1  Landlord and its designees shall have the
right to enter upon the Demised Premises at all reasonable
hours upon prior notice to Tenant (oral or written) (and
without notice in emergencies at all times):  (a) to in-
spect the Demised Premises; (b) to make repairs to or per-
form other work on the Demised Premises, by reason of Ten-
ant's failure to perform same, as provided in Section 7.2;
(c) to exhibit the Demised Premises to prospective pur-
chasers, lenders or tenants; (d) to alter, decorate or
otherwise prepare the Demised Premises for reoccupancy at
any time after Tenant has abandoned the same; and (e) for
any other lawful purpose.  None of the foregoing shall
constitute an actual or constructive eviction of Tenant,
in whole or in part, or a deprivation of its rights, nor
subject Landlord to any liability or impose upon Landlord
any obligation, responsibility or liability whatsoever,
for the care, supervision or repair of the Demised Prem-
ises, or any part thereof, other than as herein specifi-
cally provided, or entitle Tenant to any compensation or
diminution or abatement of the rent reserved.

20.2  For a period commencing nine (9) months
prior to the end of the Term, Tenant shall permit Landlord
to place upon the exterior of the Building or the Demised
Premises the usual "For Rent" or "For Lease" signs,
provided that in placing such signs, Landlord shall not
remove, alter or interfere with the use or visibility of
any of Tenant's permitted signs.

20.3  If an excavation or other construction
shall be undertaken upon land adjacent to the Demised
Premises, Tenant shall afford to the person performing
such work permission to enter upon the Demised Premises
for the purpose of doing such work as such party deems
necessary to preserve the Building, the Demised Premises,
or any portions thereof, from injury or damage and to
support the same by proper foundations, without the same
constituting an actual or constructive eviction of Tenant,
in whole or in part, and without any claim for damages or
indemnity against Landlord, or compensation or diminution
or abatement of rent.  The person performing such work
shall minimize interference with, or interruption of,
Tenant's business operations, and shall repair any damage
caused to the Building or the Demised Premises as a result
of such work.

20.4  Tenant shall permit Landlord or its desig-
nees to erect, use, maintain and repair pipes, cables,
conduits, plumbing, vents and wires, in, to and through
the Land, as and to the extent that Landlord may now or
hereafter deem to be necessary or appropriate for the
proper operation of the Shopping Center.  Landlord shall
use its best efforts to perform all such work, so far as
practicable, in such manner as to avoid interference with
Tenant's use of the Demised Premises, provided that Land-
lord shall not be required to incur overtime labor costs.

-37-

## ARTICLE 21

### RULES AND REGULATIONS

21.1   Tenant agrees that at all times during the term of this Lease it shall comply (and shall compel its officers, employees, contractors, licensees, invitees, subtenants, concessionaires and all others doing business with it to comply) with all rules and regulations speci- fied in Exhibit G annexed hereto together with all non- discriminatory amendments, modifications, deletions and other non-discriminatory rules and regulations for the use and occupancy of the Shopping Center as Landlord may from time to time promulgate; provided, however, that if there shall arise any conflict between said rules and regula- tions and the express rights of Tenant contained in this Lease, the provisions of this Lease shall be controlling.

21.2   Landlord reserves the right (i) to refuse admission to the Shopping Center and the Demised Premises, outside of Tenant's business hours of operation of the Demised Premises, to any person not known to any watchman in charge or properly identified; (ii) to eject any person from the Shopping Center whose conduct may tend to be harmful to the safety and interests of the tenants and the property therein; and (iii) to close any part of the Shopping Center during any riot or other commotion where person or property may be imperiled.

## ARTICLE 22

### SIGNS

22.1   Tenant may, at its sole cost and expense, erect ~~a~~ readerboard signs ~~adjacent to 49th Street~~ at the locations shown therefor on Exhibit B2, provided that (i) the general style and dimensions of such sign are similar to Tenant's readerboard sign for "The Movies at Regency", a photograph of which is attached hereto as Exhibit H and made a part hereof, and (ii) Tenant shall have obtained all governmental permits and approvals required for the erection and maintenance of such signs.  Landlord agrees to cooperate with Tenant in connection with its application for such permits and approvals, provided that Landlord shall not be required to incur any expense or liability. All other signs, canopies or lettering (herein collec- tively called "signs") which Tenant shall desire to main- tain or display which are visible from outside of the De- mised Premises shall be subject to the prior written con- sent of Landlord, which consent shall not be unreasonably withheld or delayed, provided that such signs shall comply with the requirements set forth in Exhibit F annexed here- to and made a part hereof.  All signs permitted to be erected by Tenant shall be erected and maintained by Ten- ant at its own cost and expense.  Notwithstanding anything herein contained to the contrary, Landlord's consent shall not be required for the erection and maintenance by Tenant of signs within the interior of the Building that are not visible from outside the Building ~~except~~ for signs advertising future performances in the Building.  Landlord shall have the right to remove any signs in connection with any repairs, alterations or improvements by Landlord in or upon the Demised Premises or the Building, or any part thereof, provided the same shall be removed and promptly replaced upon completion of said work at Land- lord's expense.

-38-

## ARTICLE 23

### NAME OF SHOPPING CENTER

23.1  Landlord shall have and retain all prop-
erty rights in and rights to the use of the name or desig-
nation of the Shopping Center and Tenant agrees that Land-
lord shall have the absolute right to change the name or
designation of the Shopping Center at any time or from
time to time during the term of this Lease.  Tenant shall
not have any property right or interest in any name or
distinctive designation which may become associated with
Tenant's business to be conducted at the Demised Premises
or the Shopping Center if such name or designation shall
contain any reference to the name or designation of the
Shopping Center and Tenant agrees to use the name or des-
ignation of the Shopping Center only with the consent of
Landlord.  Landlord hereby consents to Tenant's use of the
name "The Movies at Hialeah" as the name of Tenant's
business operation conducted at the Demised Premises.

## ARTICLE 24

### ASSIGNMENT; SUBLETTING

24.1  Tenant shall not sublet the Demised Prem-
ises or any part thereof, nor assign, mortgage or other-
wise encumber or dispose of this Lease or any interest
therein, nor grant concessions or licenses for the occu-
pancy of the Demised Premises, or any part thereof, with-
out Landlord's prior written consent in each of the fore-
going cases except that Tenant shall have the right to
sublet the Premises or assign this Lease if the sublessee
or assignee is, at the time of subletting or assignment
and thereafter throughout the entire Term hereof, a corpo-
ration which is an affiliate or wholly-owned subsidiary of
Tenant, or which may, as a result of a reorganization,
merger or consolidation, succeed to the entire business
carried on by Tenant at such time, provided the following
conditions are satisfied, to wit:

(a)  The assignment and/or subletting must
be, respectively, of all of Tenant's leasehold interest
and/or of the entire Demised Premises.

(b)  At the time of such assignment and/or
subletting, this Lease must be in full force and effect
and no Event of Default shall have occurred hereunder.

(c)  The assignee or sublessee shall as-
sume, by written recordable instrument, in form and con-
tent reasonably satisfactory to Landlord, the due per-
formance of all of Tenant's obligations under the Lease,
including any accrued obligations at the time of the
assignment or subletting.

(d)  A copy of the assignment or sublease
and the original assumption agreement (both in form and
content satisfactory to Landlord) fully executed and ac-
knowledged by the assignee and/or sublessee together with
a certified copy of a properly executed corporate resolu-
tion authorizing such assumption agreement, shall be de-
livered to Landlord within ten (10) days prior to the ef-
fective date of such assignment or subletting.

-39-

(e)  Such assignment and/or subletting shall be upon and subject to all the provisions, terms, covenants and conditions of this Lease and Tenant (and any prior assignee(s) and sublessee(s)) shall continue to be and remain liable thereunder.

~~24.2  Tenant, if it requests in writing Land~~lord's consent to an assignment of this Lease or a subletting of the Demised Premises, shall submit to Landlord the name of the proposed assignee or subtenant, the nature of its business, and such information as to its financial responsibility and standing as Landlord may reasonably require.  Upon the receipt of such request and information from Tenant, Landlord shall have an option, to be exercised in writing within forty-five (45) days after such receipt, to cancel and terminate this Lease, if the request is to assign this Lease or to sublet all of the Demised Premises, in each case as of the date set forth in Landlord's notice of exercise of such option, which shall be not less than forty-five (45) days nor more than one hundred twenty (120) days following the service of such notice.  This paragraph 24.2 shall not apply if there is a ~~consolidation, sale or merger of Tenant.~~

~~24.3  In the event Landlord shall exercise the~~ option provided in Section 24.2, Tenant shall surrender possession of the entire Demised Premises on the date set forth in such notice in accordance with the provisions of ~~Article 30 of this Lease.~~

~~24.4  In the event that Landlord shall not exercise the option to cancel this Lease as provided in Section 24.2~~ within forty-five (45) days after the receipt of Tenant's written request, then Landlord's consent to such request shall not be unreasonably withheld, provided (i) such assignment or sublease is effected in accordance with the provisions of subsections (a) through (e) of Section 24.1, (ii) Section 24.5 shall apply with respect to a possible adjustment of Rentals and (iii) in determining reasonableness under this Section, Landlord may take into consideration all relevant factors surrounding the proposed assignment or sublease including, without limitation, the following:

~~(i)  the financial condition and business~~ ~~reputation of the proposed assignee or subtenant;~~

(ii)  restrictions contained in leases of other tenants of the Shopping Center;

(iii)  the effect that the proposed assignee's or subtenant's use or occupancy of the Demised Premises would have upon the operation and maintenance of the Shopping Center and Landlord's investment therein; and

(iv)  whether the proposed assignee or subtenant is a tenant or occupant of the Shopping Center or one with whom Landlord or its agents is actively negotiating for space in the Shopping Center.

*

24.5  If, under the proposed assignment or sublease consented to by Landlord, the fixed minimum rent and/or other consideration payable exceed the Fixed Minimum Rent provided in this Lease, Tenant, or at Landlord's option, the sublessee or assignee, shall pay fifty percent (50%) of said excess fixed minimum rent and/or other

*Notwithstanding anything herein contained to the contrary, any assignee or subtenant may use the Demised Premises only for the uses expressly permitted by this Lease.

-40-

consideration to Landlord as additional rent hereunder as
and when the same become due under said assignment or sub-
lease.

24.6  Notwithstanding anything contained in this
Lease to the contrary and notwithstanding any consent by
Landlord to any assignment of the Lease or sublease of the
Demised Premises, no assignee or subtenant shall further
assign this Lease or further sublease the Demised Premises
without Landlord's prior written consent in each of such
cases; and, in no event shall any assignment or subletting
to which Landlord may have consented release or relieve
Tenant from its obligations fully to perform all of the
terms, covenants and conditions of this Lease on its part
to be performed.

24.7  Any change in the ownership of and/or
power to vote the majority of the outstanding capital
stock of Tenant, without the prior written consent of
Landlord, shall be deemed to be an assignment for purposes
of this Article; provided, however, that no such change
shall be deemed an assignment if the outstanding capital
stock of Tenant is traded on a recognized national secu-
rities exchange and the principal purpose of the change
was not to transfer the leasehold estate created by this
Lease.   In the event that Tenant is a partnership, if
there shall occur any change in either:  (i) any of the
general partners; or (ii) the holders of fifty (50%)
percent or more of the limited partnership interest
thereof, without the prior written consent of Landlord,
such change shall be deemed to be an assignment for pur-
poses of this Article.


ARTICLE 25

BANKRUPTCY

25.1  If at any time after the date of this
Lease:  (i) any proceeding in bankruptcy, insolvency or
reorganization shall be instituted against Tenant pursuant
to any Federal or state law now or hereafter enacted, or
any receiver or trustee shall be appointed for all or any
portion of Tenant's business or property, or any execution
or attachment shall issue against Tenant or Tenant's busi-
ness or property or against the leasehold estate created
hereby and any such proceeding or appointment or issuance
be not discharged and dismissed within sixty (60) days
from the date of such proceeding, appointment or issuance;
or (ii) Tenant shall be adjudged a bankrupt or insolvent,
or Tenant shall make an assignment for the benefit of
creditors, or Tenant shall file a voluntary petition in
bankruptcy or shall petition for (or enter into) an agree-
ment for reorganization, composition or any other arrange-
ment with Tenant's creditors under any Federal or state
law now or hereafter enacted, or this Lease or the estate
of Tenant herein shall pass to or devolve upon, by opera-
tion of law or otherwise, anyone other than Tenant, the
occurrence of any one of such contingencies shall be
deemed to constitute and shall be construed as a repudia-
tion by Tenant of Tenant's obligations hereunder and shall
cause this Lease ipso facto to be cancelled and termi-
nated, without thereby releasing Tenant; and upon such
termination, Landlord shall have the immediate right to
re-enter the Demised Premises and to remove all persons
and property therefrom and this Lease shall not be treated
as an asset of the Tenant's estate and neither the Tenant

nor anyone claiming by, through or under Tenant by virtue of any law or any order of any court shall be entitled to possession of the Demised Premises or to remain in possession thereof.  Upon the termination of this Lease, as aforesaid, Landlord shall have the right to retain as partial damages, and not as a penalty, any prepaid rents and the security deposit and Landlord shall also be entitled to exercise such rights and remedies to recover from Tenant as damages such amounts as are specified in Article 26 hereof, unless any statute or rule of law governing the proceedings in which such damages are to be proved shall lawfully limit the amount of such claims capable of being so proved, in which case Landlord shall be entitled to recover, as and for liquidated damages, the maximum amount which may be allowed under any such statute or rule of law.  As used in this Article, the term "Tenant" shall be deemed to include and shall apply to Tenant and its successors, permitted sublessees and assigns and the Guarantor, if any.  Tenant acknowledges that the Demised Premises are part of an integrated center of retail establishments of the finest quality with due regard to the importance of, among other things, the tenant mix and balance in the Shopping Center and, therefore, that any assignee (by operation of law or otherwise) must provide Landlord with adequate assurance of its future performance under this Lease.  In the event of Tenant's bankruptcy, insolvency or reorganization, the parties hereto specifically intend that the actions of the trustee or Tenant in assuming and/or assigning this Lease shall be governed by the provisions of Section 365 of Title 11 of the United States Code applicable to leases of premises in shopping centers.

## ARTICLE 26

### DEFAULTS AND REMEDIES

26.1  The following shall be defined and deemed as an "Event of Default": (a) if Tenant fails to pay any Rentals or other charges or sums payable by Tenant hereunder within ten (10) days after Landlord shall have given Tenant written notice of such non-payment; provided, however, that Landlord shall not be required to give Tenant such written notice more than three (3) times in any twelve (12) month period; or (b) if at a time when Landlord is not required to give Tenant a non-payment notice pursuant to the preceding clause (a), Tenant fails to pay any Rentals or other charges or sums payable by Tenant hereunder within ten (10) days after the same become due and payable under this Lease; or (c) if Tenant defaults in performing any other of the terms, covenants or conditions of this Lease to be observed or performed by Tenant and such default shall continue for more than thirty (30) days after written notice of such default shall have been served upon Tenant, or any sooner time otherwise specifically set forth in this Lease, or in the case of such default which cannot with the exercise of due diligence be cured within such period, if Tenant fails to commence curing the default within such period and thereafter prosecute the curing of such default with all due diligence until completely cured; or (d) if Tenant shall vacate or abandon the Demised Premises; or (e) if by operation of law any interest of Tenant shall pass to another and not revert to Tenant within thirty (30) days; or (f) any other matter elsewhere in this Lease described as an "Event of Default".

26.2  In case of any Event of Default*, the Land-
lord shall have the immediate right of re-entry and may
remove all persons and property from the Demised Premises
by summary proceedings, force or otherwise.  In addition,
in case of any Event of Default (whether or not Landlord
shall elect to re-enter or to take possession pursuant to
legal proceedings or pursuant to any notice provided for
by law) Landlord shall have the right, at its option, to
immediately terminate this Lease on seven (7) days' notice
to Tenant and/or it may, from time to time, whether or not
this Lease be terminated, make such alterations and re-
pairs as may be necessary in order to relet the Demised
Premises or any part thereof for such term or terms (which
may extend beyond the Term) and at such rents and upon
such other terms and conditions as Landlord in its sole
discretion may deem advisable.  Upon each such reletting
all rents received by the Landlord from such reletting
shall be applied:  first, to the payment of any indebted-
ness (other than rent due hereunder) of Tenant to Land-
lord; second, to the payment of any reasonable costs and
expenses of such reletting, including brokerage fees,
attorneys' fees and costs of alterations and repairs;
third, to the payment of rents due and unpaid hereunder,
and the residue, if any, shall be held by Landlord and
applied in payment of future rents as the same may become
due and payable hereunder, with the right reserved to
Landlord to bring such action(s) or proceeding(s) for the
recovery of any deficits remaining unpaid without being
obliged to await the end of the Term for a final determi-
nation of Tenant's account.  The commencement or mainte-
nance of any one or more actions shall not bar Landlord
from bringing other or subsequent actions for further
accruals pursuant to the provisions of this Article.  If
such rents received from such reletting during any month
shall be less than that to be paid during that month by
Tenant hereunder, Tenant shall pay any such deficiency to
Landlord.  Such deficiency shall be calculated and paid
monthly subject to Landlord's right of action(s) or pro-
ceeding(s) as aforesaid.  No such re-entry or taking
possession of said Demised Premises by Landlord shall be
construed as an election on its part to terminate this
Lease unless a written notice of such intention be given
to Tenant or unless the termination thereof be decreed by
a court of competent jurisdiction.  Notwithstanding any
such reletting without termination, Landlord may at any
time thereafter elect to terminate this Lease for such
previous breach on five (5) days' notice to Tenant.
Should Landlord at any time terminate this Lease for any
breach, in addition to any other remedies it may have, it
may recover from Tenant all damages it may incur by reason
of such breach as damages for loss of the bargain and not
as a penalty, including the cost of recovering the Demised
Premises, reasonable attorneys' fees, and including the
worth at the time of such termination of the excess, if
any, of the amount of rent reserved in this Lease for the
remainder of the Term over the aggregate rental value of
the Demised Premises for the remainder of the Term, all of
which shall be immediately due and payable from Tenant to
Landlord.

26.3  If Tenant shall default in the performance
of any provision, covenant or condition on its part to be
performed under this Lease (including, without limitation,
its obligations to make repairs, maintain insurance, com-
ply with all laws, ordinances and regulations and pay all
bills for utilities), and such default shall continue
uncured beyond the time, if any, permitted by this Lease

*Landlord shall give the Tenant a five (5) day notice in the manner herein specified
 after the expiration of such five (5) day notice,

-43-

for the curing of the default by Tenant, then Landlord may, at its option, perform the same for the account and at the expense of Tenant; provided, however, that if the default in such performance has given rise to an emergency situation or will subject Landlord to any civil or criminal liability, Landlord may, at its option, perform the same for the account and at the expense of Tenant at any time without waiting for the expiration of any period permitted for the curing of the default by Tenant.  If Landlord at any time shall be compelled to pay or elects to pay any sum of money or do any act which requires the payment of any sum of money by reason of the failure of the Tenant to comply with any provision of this Lease, or if Landlord incurs any expense in prosecuting or defending any action or proceeding by reason of any default of Tenant under this Lease, the sums so paid by Landlord with Interest, costs and damages shall be due from and be paid by Tenant to Landlord on demand.

26.4   The rights and remedies whether herein or anywhere else in this Lease provided shall be cumulative and the exercise of any one shall not preclude the exercise or act as a waiver of any other right or remedy of Landlord hereunder, or which may be existing now or hereafter at law or in equity or by statute.  Landlord shall not be liable for failure to relet the Demised Premises. The word "re-enter" as used in this Lease shall not be restricted to its technical meaning.

26.5   The failure of Landlord to seek redress for violation of, or to insist upon the strict performance of, any covenant or condition of this Lease, or of any rule or regulation, shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. One or more waivers of any covenant or condition by Landlord shall not be construed as a waiver of a subsequent breach of the same or any other covenant or condition, and the consent or approval by Landlord to or of any act by Tenant requiring Landlord's consent or approval shall not be construed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar act by Tenant.  Any delay or failure of Landlord in billing Tenant for Tenant's Proportionate Share of Common Area Maintenance or Impositions or other charges hereunder shall not constitute a waiver to collect the same or in any way impair the continuing obligation of Tenant thereafter to pay same.  No provision of this Lease shall be deemed to have been waived by Landlord, unless such waiver be in writing and signed by Landlord.

26.6   The receipt by Landlord of rent with knowledge of the breach of any covenant of this Lease shall not be deemed a waiver of such breach.  No payment by Tenant or receipt by Landlord of a lesser amount than the rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement on any check nor any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy in this Lease provided.

26.7   In the event of a breach or threatened breach by Tenant of any of the covenants or provisions of this Lease, Landlord shall have the right of injunction

-44-

and the right to invoke any remedy allowed at law or in equity as if reentry, summary proceedings and other remedies were not herein provided for.  Nothing contained herein shall be construed to limit or waive Tenant's rights to obtain an injunction against Landlord, if and to the extent such remedy is permitted by law, in the event of a breach or threatened breach by Landlord of any of its obligations under this Lease.

 26.8  It is mutually agreed by and between Landlord and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Demised Premises, and/or any emergency statutory or any other statutory remedy.

 26.9  Tenant hereby exressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant's being evicted or dispossessed, or in the event of Landlord's obtaining possession of the Demised Premises by reason of Tenant's violation of the provisions of this Lease.

 26.10  Tenant further agrees that it shall not interpose any counterclaim or counterclaims in a summary proceeding or in any other action or proceeding to evict the Tenant or otherwise recover possession of the Demised Premises and Tenant hereby waives the right to interpose any counterclaim or counterclaims in any such proceeding(s).

### ARTICLE 27

### SUBORDINATION

 27.1  Subject to the conditions contained in Section 27.4, this Lease, at the option of the Landlord or the holder of any mortgage on the Demised Premises, shall be subject and subordinate to all ground or underlying leases and to all mortgages now or hereafter affecting such leases, and to all mortgages which may now or hereafter affect the Shopping Center, or any portion thereof, whether such mortgages cover only the Shopping Center or be a blanket mortgage covering other premises in addition to the Shopping Center, and to any renewals, modifications, consolidations, replacements or extensions thereof. The term "mortgages" as used herein shall be deemed to include trust indentures and deeds of trust.  This clause shall be self-operative and no further instrument of subordination shall be required by Landlord or any lessor or mortgagee.  In the event Landlord or any lessor or mortgagee desires confirmation of such subordination, Tenant shall promptly, and without charge therefor, execute any certificate that Landlord may request.  Tenant hereby constitutes and appoints Landlord as Tenant's attorney-in-fact to execute any such certificate or certificates for and on behalf of Tenant. 

 27.2  Tenant agrees that neither the cancellation nor the termination of any ground or underlying lease to which this Lease is now or hereafter subject or subordinate, nor any foreclosure of any mortgage now or hereafter affecting the title of the Demised Premises, nor the

institution of any suit, action, summary or other proceed-
ing by Landlord, nor any foreclosure proceeding brought by
the holder of any such mortgage, nor any proceeding to
recover possession of the Demised Premises shall by opera-
tion of law or otherwise result in the cancellation or
termination of this Lease or the obligations of the Tenant
hereunder, unless the holder of any mortgage affecting the
fee of the Demised Premises or Landlord shall so elect,
and Tenant covenants and agrees to attorn to the Landlord
(or to any successor to the Landlord's interest in the
Demised Premises) or to the holder of any mortgage or
ground or underlying lease or to the purchaser of the De-
mised Premises in foreclosure.  If any*mortgagee requires          *future
that this Lease be prior rather than subordinate to any
such mortgage, Tenant shall, promptly upon request there-
for by Landlord or such mortgagee, and without charge
therefor, execute a document effecting and/or acknowledg-
ing such priority, which document shall contain, at the
option of such mortgagee, an attornment obligation to the
mortgagee, as landlord, in the event of foreclosure or to
any party acquiring title through such mortgage in such
event.  If Tenant fails to execute, acknowledge and
deliver such document with ten (10) days after Landlord's
demand therefor, Tenant hereby constitutes and appoints
Landlord as Tenant's attorney-in-fact to execute any such
instrument or instruments for and on behalf of Tenant.
Upon request of any mortgagee of record, Tenant shall give
prompt written notice of any default of Landlord here-
under, and Tenant shall allow such mortgagee a reasonable
length of time commencing from the date that such
mortgage shall receive such notice from Tenant, in which
to cure any such default.  Any such notice shall be sent
to the mortgage loan department of any such mortgagee at
its home office address.

       27.3  Anything in this Lease to the contrary
notwithstanding, Landlord shall have the unrestricted
right and privilege during the term of this Lease to mort-
gage the fee interest in the Demised Premises or any other
interest to which this Lease is or may be subject and
subordinate.

       27.4  (a)  The subjection and subordination of
this Lease in accordance with Section 27.1, to any and all
ground or underlying leases which first encumber the De-
mised Premises after the date hereof is subject to the
express conditions that, so long as this Lease shall be
in effect and no Event of Default has occurred hereunder,
(i) Landlord shall be permitted to apply all condemnation
awards and proceeds of insurance as provided in this
Lease, and (ii) in the event of termination of the term of
any such ground or underlying lease, by re-entry, notice,
summary proceedings or other action or proceeding, or if
the term of such ground or underlying lease shall other-
wise terminate or expire before the termination or expira-
tion of the term of this Lease, and if at such time Land-
lord shall not have the right to terminate the term of
this Lease pursuant to Article 26, Tenant shall not be
made a party to any action or proceeding to remove or
evict Tenant or to disturb its possession by reason of or
based upon such termination or expiration of the term of
such ground or underlying lease, and this Lease shall con-
tinue in full force and effect as a direct lease between
Tenant and the then owner of the fee or lessor of such
ground or underlying lease, as the case may be, upon all
of the obligations of this Lease, except that said owner
or lessor shall not (x) be liable for any previous act or

-46-

omission of Landlord under this Lease, (y) be subject to
any counterclaim, defense or offset which theretofore
shall have accrued to Tenant against Landlord, or (z) be
bound by any previous modification or amendment of this
Lease or by any prepayment of more than one month's rent.
In such event, upon written request of said owner or
lessor, or its successors or assigns, Tenant shall enter
into an agreement attorning to said owner or lessor, or
its successors or assigns, upon all of the obligations of
this Lease.  Notwithstanding the foregoing provisions of
this Section 27.4(a), at the request of any such lessor or
owner or its successors or assigns, Tenant shall execute
and deliver to such lessor or owner an agreement, in re-
cordable form, subordinating this Lease to the ground or
underlying lease of such owner or lessor and all modifi-
cations, extensions, and renewals thereof, provided that
said agreement shall contain "non-disturbance" provisions
substantially to the same effect as those set forth in
this Section 27.4(a), and, at the option of such lessor or
owner or its successors or assigns, shall also contain an
agreement by Tenant to attorn to such lessor or owner, or
its successors or assigns, upon all of the obligations of
this Lease.

        (b)   The subjection and subordination of
this Lease in accordance with Section 27.1 to any and all
mortgages which first encumber the Demised Premises after
the date hereof, is subject to the express conditions that
(i) so long as this Lease shall be in effect and no Event
of Default has occurred hereunder, Landlord shall be per-
mitted to apply all condemnation awards and proceeds of
insurance as provided in this Lease, and (ii) during the
term of this Lease (if Landlord shall not then have the
right to terminate such term pursuant to Article 26), (A)
Tenant shall not be named or joined in any action or pro-
ceeding to foreclose any such mortgage, (B) such action or
proceeding shall not result in a cancellation or termina-
tion of the term of this Lease, and (C) if the holder of
any such mortgage becomes the owner of the fee or the as-
signee of any ground or underlying lease referred to in
Section 27.1, or the lessee under any other lease given in
substitution therefor, or if the Demised Premises shall be
sold as a result of any action or proceeding to foreclose
such mortgage, this Lease shall continue in full force and
effect as a direct lease between Tenant and the then owner
of the fee or the then lessee under such ground or under-
lying lease, or the lessee under any other lease given in
substitution therefor, or such purchaser of the Demised
Premises, as the case may be, upon all of the obligations
of this Lease, except that such owner, lessee or purchaser
shall not (x) be liable for any previous act or omission
of Landlord under this Lease, (y) be subject to any coun-
terclaim, defense or offset, which theretofore shall have
accrued to Tenant against Landlord, or (z) be bound by any
previous modification or amendment of this Lease or by any
prepayment of more than one month's rent.  In such event,
upon written request of said holder, owner, lessee or pur-
chaser, or its successors or assigns, Tenant shall enter
into an agreement attorning to said holder, owner, lessee
or purchaser, or its successors or assigns, upon all of
the obligations of this Lease.  Notwithstanding the fore-
going provisions of this Section 27.4(b), at the request
of the holder of any of such mortgage, Tenant shall
execute and deliver to such holder an agreement, in re-
cordable form, subordinating this Lease to the lien of the
mortgage held by such holder and all modifications, con-
solidations, replacements and extensions thereof, provided

-47-

that said agreement shall contain "non-disturbance" pro-
visions substantially to the same effect as those set
forth in this Section 27.4(b), and, at the option of such
holder, shall also contain an agreement by Tenant to
attorn to such holder, owner, purchaser or lessee upon
all of the obligations of this Lease.

27.5  Within thirty (30) days after the execu-
tion and delivery of this Lease by both parties, Landlord
shall request and thereafter exercise every reasonable
effort to obtain a "non-disturbance agreement" for the
benefit of Tenant from the lessor under each presently
existing ground or underlying lease, if any, covering the
Demised Premises and the holder of each presently existing
mortgage covering the Demised Premises.  In no event,
however, shall Landlord be required to (i) make any
payment to any such lessor or holder, (ii) alter any of
the terms of any such lease or mortgage (or the note
secured thereby or any documents related thereto) or (iii)
commence any action or proceeding against any such lessor
or holder.  Landlord shall have no liability to Tenant,
and Tenant's obligations under this Lease shall not be
affected, if any such lessor or holder fails or refuses to
execute and deliver a non-disturbance agreement to Tenant.
Each non-disturbance agreement shall be substantially to
the same effect as Section 27.4(a) or Section 27.4(b), as
the case may be, and Tenant shall, if so requested by any
such lessor or holder delivering such non-disturbance
agreement, join therein and agree to attorn as provided in
Section 27.4(a) and Section 27.4(b).

ARTICLE 28

LENDER'S REQUIREMENTS

28.1  If, in connection with obtaining financing,
or refinancing for the Shopping Center or any portion
thereof, or in connection with obtaining the approval of
this Lease by any mortgagee of the Shopping Center or any
portion thereof, a banking, insurance or other institu-
tional lender, or any such mortgagee, shall request rea-
sonable modifications to this Lease as a condition to such
financing or refinancing or approval, Tenant will not un-
reasonably withhold, delay or defer its consent thereto,
provided that such modifications do not increase any of
the rents payable by Tenant hereunder or materially in-
crease any of the other obligations of Tenant or mate-
rially decrease the obligations of Landlord hereunder.
In furtherance, but not in limitation, of the foregoing,
Tenant agrees to give notices of any defaults by Landlord
to such lender or mortgagee and/or to permit the curing of
such defaults by such lender or mortgagee together with
the granting of such additional time for such curing as
may be reasonably required for such lender or mortgagee to
obtain possession of the mortgaged premises.  In no event
shall a requirement that the consent of any such lender
given for any modification of this Lease or for any as-
signment or sublease, be deemed to materially adversely
affect the leasehold interest hereby created.

-48-

ARTICLE 29

QUIET ENJOYMENT; TENANT'S REMEDIES

29.1  After Tenant commences construction of the
Building in accordance with Article 4 hereof (or, with
respect to Landlord's Work provided by Section 4.4, after
Tenant opens the Demised Premises for business), Tenant
shall have no right to cancel this Lease, seek any compen-
sation or·abatement or diminution of rent, sue for dam-
ages, or assert any other contractual, legal or equitable
remedy based either on a claim that Landlord failed to
deliver possession in accordance with the terms of this
Lease or based on a claim that the size, location or lay-
out of the Demised Premises, the service areas (if any),
sidewalks, driveways, parking*or other common areas (if
any), or any other facilities to be furnished by Landlord,
were not completed or furnished in accordance with the
terms of this Lease.

*unless
Landlord sub-
sequently
reduces
Tenant's park-
ing below
applicable
code require-
ments,

29.2  Landlord covenants and agrees with Tenant
that upon Tenant paying the Rental and observing and per-
forming all the terms, covenants and conditions on Ten-
ant's part to be observed and performed, Tenant may peace-
ably and quietly enjoy the Premises.  In the event of any
breach by the Landlord of this covenant provided the same
would in law and or equity entitle Tenant to the remedy,
in law or equity, tc cancel this Lease, Tenant may, by
written notice given to Landlord within thirty (30) days
after any such breach shall have occurred, cancel this
Lease, and upon any such cancellation all rights of either
party against the other shall cease and the term of this
Lease shall expire with the same force and effect as if
the date of such cancellation were the date originally
fixed herein for the expiration of the Term of this Lease.

29.3  With respect to any provision of this
Lease which provides, in effect, that Landlord shall not
unreasonably withhold or unreasonably delay any consent or
any approval, Tenant, in no event, shall be entitled to
make, nor shall Tenant make, any claim for, and Tenant
hereby waives any claim for money damages; nor shall Ten-
ant claim any damages by way of setoff, counterclaim or
defense, based upon any claim or assertion by Tenant that
Landlord has unreasonably withheld or unreasonably delayed
any consent or approval; but Tenant's sole remedy shall be
an action or proceeding to enforce any such provision, or
for specific performance, injunction or declaratory judg-
ment.

ARTICLE 30

SURRENDER OF DEMISED PREMISES

30.1  On the last day of the term of this Lease
or on the sooner termination thereof, Tenant shall (i)
peaceably surrender the Demised Premises broom-clean, in
good order, and restored to their original condition as of
the date on which Tenant opened the Demised Premises for
business, except for reasonable wear and tear, and (ii) at
its expense remove from the Demised Premises all moveable
furniture, furnishings, trade fixtures, carpeting and
signs which were furnished and installed by and at Ten-
ant's sole cost and expense ("Tenant's Property"), and any
of Tenant's Property not so removed may, at Landlord's
election, and without limiting Landlord's right to compel

-49-

removal thereof, be deemed abandoned.  Any damage to the
Demised Premises caused by Tenant in the removal of Ten-
ant's Property shall be repaired by Tenant at Tenant's
expense.

30.2  All alterations, additions, improvements,
repairs, decorations (including any hard surface, bonded
or adhesively affixed flooring), heating, ventilating and
air-conditioning equipment and fixtures and plumbing
facilities (other than Tenant's Property) which shall have
been made, furnished or installed by or at the expense of
either Landlord or Tenant in or upon the Demised Premises
shall remain upon and be surrendered with the Demised
Premises as a part thereof, without disturbance and with-
out charge; provided, however, that Landlord may designate
by written notice to Tenant those alterations, additions,
improvements, repairs, decorations, equipment, fixtures
and/or facilities which shall be removed by Tenant on the
last day of the term of this Lease or sooner termination
thereof, and Tenant shall promptly remove the same and
repair any damage to the Demised Premises caused by such
removal.  Notwithstanding the foregoing, Landlord may not
require Tenant to remove any alterations, improvements,
additions or fixtures which are so affixed to the Building
that the same cannot be removed without material damage,
if such alterations, improvements, additions or fixtures
were either installed by Tenant as part of the initial
construction of the Building or installed thereafter with
the consent of Landlord or, if permitted by this Lease,
without such consent.

30.3  If Tenant or anyone claiming under Tenant
shall remain in possession of the Demised Premises or any
part thereof after the expiration of the Initial Term of
this Lease (or, if the option therefor has been effective-
ly exercised, the Renewal Term of this Lease) without any
agreement in writing between Landlord and Tenant with re-
spect thereto, the person remaining in possession shall be
deemed a tenant at sufferance, and such person's occupancy
during such holding shall be subject to all of the appli-
cable terms and conditions of this Lease insofar as they
are applicable to a tenant at sufferance except that such
person shall pay to Landlord as liquidated damages an
amount equal to twice the Fixed Minimum Rent rate due dur-
ing the last year of the Term and additional rent and
other charges payable hereunder (including Tenant's Pro-
portionate Share of Common Area Maintenance and Imposi-
tions) for each and every day after the expiration of the
Term, up to and including the day possession of the De-
mised Premises is surrendered.  The acceptance of rent or
other payments by Landlord shall not create a new or
additional tenancy other than as aforesaid.

30.4  If Landlord has prematurely terminated
this Lease by reason of Tenant's default, and Tenant re-
mains in possession of the Demised Premises beyond the
termination date set forth in Landlord's notice, Tenant
shall be deemed to be a trespasser illegally occupying the
Demised Premises.  During the period of time that Tenant
so occupies the Demised Premises, Tenant shall be obli-
gated to pay to Landlord as liquidated damages an amount
equal to three (3) times the Fixed Minimum Rent rate due
during the last year prior to such termination date and
additional rent and other charges payable hereunder (in-
cluding Tenant's Proportionate Share of Common Area Main-
tenance and Impositions) for each and every day after said
termination date, up to and including the day possession

of the Demised Premises is surrendered.  The acceptance of
rent or other payments by Landlord shall not create a new
or additional tenancy other than as aforesaid.

30.5  If the Demised Premises are not surren-
dered as and when aforesaid, Tenant shall, in addition to
any remedies provided in Sections 30.3 and 30.4 above,
indemnify and hold Landlord harmless against any and all
claims, actions, damages, liabilities, losses, costs and
expenses, including attorneys' fees, resulting from the
delay by Tenant in surrendering the Demised Premises, in-
cluding, without limitation, any claims made by any suc-
ceeding occupant or prospective occupant of the Demised
Premises founded upon such delay.

30.6  No agreement to accept a surrender of the
Demised Premises prior to the expiration of the Term shall
be valid unless in writing and signed by Landlord.  The
delivery of keys to any employee of Landlord or of Land-
lord's agents shall not operate as a termination of this
Lease or a surrender of the Demised Premises.

30.7  Tenant's obligations under this Article 30
shall survive the expiration or sooner termination of the
Term.

ARTICLE 31

ESTOPPEL CERTIFICATE

31.1  Within ~~ten (10)~~ twenty (20) days after request there-
for by Landlord, Tenant, without charge therefor, shall
deliver in recordable form a certificate to any proposed
mortgagee, trustee or purchaser, or any other person, cor-
poration or other entity designated by Landlord, certify-
ing as of the date of such certificate:  (i) that Tenant
is in possession of the Demised Premises, has uncondition-
ally accepted the same and is currently paying the rent
reserved hereunder; (ii) that this Lease is unmodified and
in full force and effect (or, if there has been any modi-
fication, that the same is in full force and effect as
modified and setting forth any such modification); (iii)
whether or not there are then existing any set-offs, coun-
terclaims or defenses against the enforcement of any right
or remedy of Landlord, or any duty or obligation of Ten-
ant, hereunder (and, if so, specifying the same in de-
tail); (iv) the dates, if any, to which rent has been paid
in advance; (v) that Tenant has no knowledge of any un-
cured defaults on the part of Landlord under this Lease
(or, if Tenant has knowledge of any such uncured defaults,
specifying the same in detail); (vi) that Tenant has no
knowledge of an event having occurred that would authorize
the termination of this Lease by Tenant (or, if Tenant has
such knowledge, specifying the same in detail); (vii)
whether or not Tenant has exercised its option for the
Renewal Term provided by Section 2.3 hereof; and (viii)
any other matters that Landlord or any such person, corpo-
ration or entity may require to be confirmed.  Any such
certificate may be relied upon by Landlord and any other
person, corporation or entity to whom the same may be ex-
hibited or delivered; and the contents of such certificate
shall be binding on Tenant.  Any failure by Tenant to ex-
ecute and deliver such certificate without modification
and within the aforestated time period shall constitute an
irrevocable power of attorney appointing and designating
Landlord or its successors or assigns as attorney-in-fact

to execute and deliver such certificate as herein pro-
vided.  In addition, any such failure of Tenant to execute
and deliver such certificate shall, at Landlord's option,
be deemed a material default hereunder.

### ARTICLE 32

#### BROKER

32.1  Tenant represents to Landlord that Tenant
has not had any dealings with any broker or real estate
agent in connection with the bringing about of this Lease.
Tenant agrees to indemnify and save Landlord harmless from
and against any claims for commissions due to any broker,
finder or similar person who shall claim to have dealt
with Tenant or any of Tenant's agents in connection with
this Lease.  Landlord agrees to indemnify and save Tenant
harmless from and against any claims for commissions due
to any broker, finder or similar person who shall claim to
have dealt with Landlord or any of Landlord's agents in
connection with this Lease.

### ARTICLE 33

#### PARTIES BOUND

33.1  The provisions of this Lease shall be
binding upon and inure to the benefit of the parties here-
to, their legal representatives, successors and assigns,
except that no violation of the provisions of Article 24
shall operate to vest any rights in any assignee, subten-
ant or other successor of Tenant and the provisions of
this Article shall not be construed as modifying the pro-
visions of Article 24.

33.2  The term "Landlord" as used in this Lease
means only the owner or the mortgagee in possession for
the time being of the Demised Premises or the holder of an
underlying lease of said Demised Premises so that in the
event of any sale of said Demised Premises or an assign-
ment of this Lease or any underlying lease, Landlord shall
be and hereby is entirely freed and relieved of all obli-
gations of Landlord hereunder and it shall be deemed,
without further agreement between the parties hereto or
their successors, that such purchaser, assignee or lessee
has assumed and agreed to observe and perform all obliga-
tions of Landlord hereunder, subject to the provisions of
Section 33.3.

33.3  Notwithstanding anything to the contrary
provided in this Lease, it is understood and agreed that
there shall be absolutely no personal liability on the
part of Landlord or any officer, director, shareholder,
partner, employee or agent of Landlord (or any successor
corporate landlord or any partner of any limited or gen-
eral partnership which may become Landlord or any indivi-
dual or other entity) with respect to any of the terms,
covenants and conditions of this Lease, and Tenant shall
look solely to the equity, if any, of Landlord in the
Shopping Center for the satisfaction of each and every
remedy of Tenant in the event of breach or default by
Landlord of any of the terms, covenants and conditions of
this Lease, such exculpation of personal liability to be
absolute and without any exception whatsoever.  No other
property or assets of Landlord shall be subject to judg-

*provided Landlord has obtained a quiet enjoyment and non-disturbance agreement
for the Tenant from the new landlord.



-52-

ment, levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease, the relationship of Landlord and Tenant hereunder or Tenant's use or occupancy of the Demised Premises.

## ARTICLE 34

### EFFECT OF UNAVOIDABLE DELAYS

34.1  The period of time during which either party hereto is prevented or delayed in the performance of the making of any improvements or repairs or fulfilling any obligation required under this Lease due to delays caused by fire, catastrophe, strikes or labor trouble, civil commotion, acts of God or the public enemy, governmental prohibitions or regulations, or inability or difficulty to obtain materials, or other causes beyond such party's control (other than financial inability or inability to pay a sum of money), shall be added to such party's time for performance thereof, and such party shall be excused from such performance during the period that such performance is prevented by reason of any of the foregoing causes.

## ARTICLE 35

### ATTORNEYS' FEES

35.1  Tenant agrees to pay to Landlord upon demand, as additional rent, a sum equal to all costs and expenses (including reasonable attorneys' fees, costs of investigation and disbursements) incurred by Landlord in enforcing any or all of its rights hereunder in the event of any *Default by Tenant in the due performance or observance of any of its obligations hereunder, specifically including the cost of collecting sums due from Tenant, whether or not an action or proceeding is commenced, or levying and collecting on any judgment or arbitration award in Landlord's favor.

*Event of

## ARTICLE 36

### INTEREST

36.1  Whenever this Lease refers to "Interest", same shall be computed at a rate equal to the "Prime Rate" (as hereinafter defined) plus two (2%) percent except where otherwise in this Lease a different rate is specifically set forth.  If, however, payment of interest at any such rate by Tenant (or by the tenant then in possession having succeeded to the Tenant's interest in accordance with the terms of this Lease) should be unlawful, i.e., violative of the usury statues or otherwise, then Interest shall, as against such party, be computed at the maximum lawful rate payable by such party.  "Prime Rate" shall mean the rate being charged by Citibank, N.A. for short term ninety (90) day unsecured loans made to its preferred customers at the time the funds in question are advanced.

## ARTICLE 37

### BILLS AND NOTICES

37.1  A bill, statement, notice or communication which Landlord may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if in writing and delivered to Tenant by hand or sent by certified or registered mail, return receipt requested, postage prepaid, addressed to Tenant at the address first hereinabove given or at such other address as Tenant may designate by written notice, or left at the Demised Premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant by hand, mailed, or left at the Demised Premises as herein provided.  Any notice by Tenant to Landlord must be served by certified or registered mail, return receipt requested, addressed to Landlord at the address first hereinabove given or at such other address as Landlord may designate by written notice.  Any notice sent by certified or registered mail shall be deemed to have been made and given on the date mailed.

## ARTICLE 38

### MISCELLANEOUS

38.1  Wherever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders. Whenever a neutral singular pronoun refers to Tenant, same shall be deemed to refer to Tenant if Tenant be an individual, a corporation, a partnership or two or more individuals or corporations.

38.2  ~~Each and every term and provision of this~~ Lease which requires any performance ~~(whether~~ affirmative or negative) ~~by Tenant~~ shall be deemed to be both a cove~~nant and a condition.~~  *or landlord* 

38.3  The captions appearing in this Lease in no way define, limit, construe or describe the scope or intent of the provisions of this Lease.

38.4  The language in all parts of this Lease shall in all cases be construed as a whole according to its fair meaning, and not strictly for nor against either Landlord or Tenant, and should a court be called upon to interpret any provision hereof, no weight shall be given to, nor shall any construction or interpretation be influenced by, any presumption of preparation of a lease by Landlord or by Tenant.

38.5  The laws of the State in which the Shopping Center is situated shall govern the validity, performance and enforcement of this Lease.

38.6  The invalidity or unenforceability of any provision hereof, in whole or in part, shall not affect or impair any other provision or the remainder of the affected provision of this Lease or the application of such provision to persons or circumstances other than those to which it is held invalid or unenforceable, and each and every provision of this Lease shall be enforceable to the fullest extent permitted by law.

38.7  All negotiations, considerations, representations and understandings between the parties are incorporated in this Lease, and Tenant acknowledges and agrees that Landlord, its agents and representatives, have made no representations, warranties or promises with respect to the Shopping Center or the Demised Premises except as may be expressly set forth herein.

38.8  This Lease contains the entire agreement between the parties, and any agreement hereafter made shall be ineffective to change, modify, or discharge it in whole or in part, unless such agreement is in writing and signed by the party against whom enforcement of the change, modification or discharge is sought.

38.9  If the term of this Lease shall not have commenced within five (5) years from the date of this Lease, then this Lease shall thereupon become null and void and have no further force and effect whatsoever at law or in equity.

38.10  ~~Tenant covenants not to place this lease on record without the consent of Landlord. At the request of Landlord, Tenant will execute a memorandum of lease for recording purposes containing references to such provisions of this Lease as Landlord, in its sole discretion, shall deem necessary.~~  Landlord and Tenant hereby agree to execute a memorandum of lease for recording purposes containing references such provisions as Landlord and Tenant in their mutual discretion deem necessary.

38.11  In the event that Tenant under this Lease is a corporation, Tenant agrees to provide, within thirty (30) days after execution of this Lease, a resolution of the board of directors of Tenant's corporation approving the execution of this Lease.  In the event that Tenant fails to provide the aforementioned resolution, Landlord shall, at its option, have the right to terminate this Lease upon ten (10) days' prior notice to Tenant.

38.12  Nothing contained in this Lease shall be construed to create the relationship of principal and agent, partnership, joint venture or any other relationship between the parties hereto other than the relationship of Landlord and Tenant.

ARTICLE 39

INTENTIONALLY DELETED

ARTICLE 40

ARBITRATION

40.1  Wherever it is provided in this Lease that any question, matter or dispute is to be determined by arbitration, Landlord and Tenant, within fifteen (15) days after demand by one party for arbitration, shall each appoint an arbitrator and notify the other party thereof. Any such arbitrator may be an employee of, consultant for, or otherwise associated with the appointing party.  In default of such appointment and notification by either party, the President or any other executive officer of the American Arbitration Association shall, on written application of the party not in default, appoint an arbitrator for and on behalf of the defaulting party.

40.2  If the two arbitrators appointed pursuant to Section 40.1 shall, within fifteen (15) days after the date of notification of appointment of the one of them who is last appointed (or such longer period as Landlord and Tenant shall agree upon in writing), be unable to agree upon the determination of such question, matter or dispute, then such two arbitrators shall appoint a fit and impartial person to act as a third arbitrator within such period of 15 days or such longer period, as the case may be, then, on written application by either party, such third arbitrator shall be appointed by the President or any other executive officer of the American Arbitration Association and the person so appointed as third arbitrator shall serve and act together with the two arbitrators first appointed, for the purpose of such arbitration.  In the case of any appointment of a third arbitrator pursuant to this Section or a second arbitrator pursuant to the last sentence of Section 40.1, such arbitrator shall be a competent and impartial person having at least ten (10) years' experience in a calling connected with the subject matter of the arbitration, plus such further or additional qualifications, if any, as may be specifically required by the provisions of this Lease relating to the subject matter of such arbitration.

40.3  The arbitrators shall hold one or more hearings on the question, matter or dispute which is the subject of the arbitration and shall furnish Landlord and Tenant with the opportunity to be present and fully heard thereat by counsel or otherwise and to cross-examine.  The determination by the arbitrators of such question, matter or dispute shall be made in writing and signed by a majority of the arbitrators, within 30 days after the appointment of the last arbitrator (or such longer period as Landlord and Tenant shall agree upon in writing), and a signed copy thereof shall be delivered to each of the parties involved.  The determination so made by such arbitrators shall be final, binding and conclusive on all parties, and judgment thereon may be rendered by any court having jurisdiction, upon application of either Landlord or Tenant.  Each party shall pay the fees and expenses of the arbitrator appointed by or on behalf of such party. The fees and expenses of the third arbitrator, if any, and any other costs of the arbitration proceeding (other than the fees and expenses of the two arbitrators appointed by or on behalf of the parties) shall be borne by Landlord or by Tenant, or by both, as determined by a majority of the arbitrators, after taking into consideration the relative merits of the respective positions of the parties.

40.4  In determining any question, matter or dispute, the arbitrators shall apply in full the pertinent provisions of this Lease and shall not, unless specific provision therefor is made in this Lease, have the power to add to, modify or change any of such provisions.

40.5  Any determination rendered in accordance with the provisions of this Article shall be controlling and decisive of any question, matter or dispute thereafter arising under this Lease if, and to the extent that, such question, matter or dispute involves the same issues of law and fact.

40.6  Except as otherwise provided herein, each arbitration under the provisions of this Lease shall be conducted, settled and determined in accordance with the

-56-

Rules of the American Arbitration Association, and shall
be held in The City of New York, New York.

40.7  The parties hereto shall not be deemed to
have agreed to determination of any dispute arising out
of this Lease by arbitration unless determination in such
manner shall have been specifically provided for in this
Lease.

## ARTICLE 41

### PERCENTAGE RENT

41.1  In addition to the Fixed Minimum Rent and
other Rental herein reserved, Tenant shall pay to Landlord
as percentage rent (the "Percentage Rent") for each Fiscal
Year (as hereinafter defined) and partial Fiscal Year of
the Term an amount equal to the amount, if any, by which
eight percent (8%) (the "Percentage Factor") of Gross
Sales (as hereinafter defined) exceeds the Fixed Minimum
Rent payable hereunder for such Fiscal Year or partial
Fiscal Year.  The Percentage Rent with respect to each
Fiscal Year or partial Fiscal Year occurring within the
Term shall be payable by Tenant annually, in arrears, not
later than ninety (90) days after the last day of each
such Fiscal Year or partial Fiscal Year.  The term "Fiscal
Year", as used in this Article 41, means the one-year
period commencing on September 1 and ending on August 31.

41.2  (a)  The term "Gross Sales" as used herein
is hereby defined to include all gross box office receipts
and all other gross receipts of Tenant and of all licen-
sees, concessionaires and tenants of Tenant, from all
business or sales conducted in, at, on or from any part
of the Demised Premises, whether such receipts be obtained
at the Demised Premises or elsewhere and whether such
business be conducted by Tenant or by any licensees, con-
cessionaires or tenants of Tenant.  A sale shall be deemed
to be made in the Demised Premises if an order therefor
is secured or received in the Demised Premises, whether
or not such an order is filled in the Demised Premises or
elsewhere or if, pursuant to mail, telegraph, telephone or
other similar means, orders are received or filled at or
from the Demised Premises.  Gross Sales shall include any
and all merchandise sold or delivered in, at, on or from
any part of the Demised Premises (including, without limi-
tation, sales by means of any mechanical or vending de-
vice) and the charges for all services of any sort sold or
performed in, at or from any part of the Demised Premises
and shall include sales and charges for cash or credit,
regardless of collections in the case of the latter, but
shall exclude (i) returns and refunds in fact made by Ten-
ant upon transactions included with Gross Sales not ex-
ceeding the selling price of merchandise returned by the
purchaser and accepted by Tenant, and (ii) the amount of
any city, county, state or federal sales, luxury or excise
tax on such sales which is both added to the selling price
(or absorbed therein) and paid to the taxing authority by
Tenant (but not by any vendor of Tenant) provided that a
specific record is made at the time of each sale of the
amount of such sales, luxury or excise tax and the amount
is separately charged to the customer.  No franchise or
capital stock tax and no income or similar tax based upon
income or profits as such shall be deducted from Gross
Sales in any event whatsoever.  If any one or more depart-
ments or other division of Tenant's business shall be sub-

let by Tenant or conducted by any person, firm or corpora-
tion other than Tenant, there shall be included in Gross
Sales for the purpose of fixing the Percentage Rent pay-
able hereunder all the gross receipts of such departments
or divisions, whether such receipts shall be obtained at
the Demised Premises or elsewhere, in the same manner and
with the same effect as if the business or sales of such
departments and divisions of Tenant's business had been
conducted by Tenant itself.  Nothing herein contained
shall be construed as a consent to occupancy by a li-
censee, concessionaire or tenant, or to the use of any
mechanical or other vending device in violation of the
provisions of this Lease.

(b)  Notwithstanding the general defini-
tion of Gross Sales as set forth above in Section 41.2(a),
Gross Sales realized from the operation of any Theatre (as
hereinafter defined) during the period that the same is
being and is permitted hereunder to be operated subject to
a Four-Wall Deal (as hereinafter defined), shall be equal
to the greater of:

(i)  the sum obtained by multiplying
(A) the daily average of Gross Sales (determined without
regard to this Section 41.2(b) generated from the opera-
tion of such Theatre during the six-month period immedi-
ately preceding the commencement of the Four-Wall Deal, by
(B) the number of days such Four-Wall Deal with respect to
such Theatre is in effect; or

(ii)  the fees and all other sums re-
ceived by Tenant in consideration for entering into the
Four-Wall Deal.

For purposes of determining Gross Sales pursuant to this
Section 41.2(b), no Theatre shall be permitted to be sub-
ject to a Four-Wall Deal more than thirty (30) days in
any one-year period, and if to the extent that any Four-
Wall Deal with respect to any Theatre shall exceed such
time limit, then at Landlord's option, Gross Sales gen-
erated therefrom shall be determined solely in accordance
with the provisions of Section 41.2(a), without regard to
the special computation of Gross Sales provided in this
Section 41.2(b)

(c)  For purposes of this Lease, (i) the
term "Theatre" means any Theatre, auditorium or exhibition
area located in the Building, and (ii) the term "Four-Wall
Deal" means any arms-length, bona fide, business arrange-
ment between Tenant and any third-party which is not an
affiliate of Tenant, pursuant to which such third-party is
permitted to use a Theatre or Theatres on a flat fee basis
for the showing of special attractions.  Tenant hereby
covenants and agrees that no Theatre shall be subject to a
Four-Wall Deal for more than thirty (30) days in any one-
year period.

41.3  Tenant shall prepare and keep at ~~the~~ its corporate
neadquarters ~~Demised Premises~~ for a period of not less than three (3)
years, adequate books and records (conforming to generally
accepted accounting practices, consistently applied) show-
ing Gross Sales for each month throughout the Term.  Ten-
ant agrees that all Gross Sales arising from cash trans-
actions shall be registered at the time each sale is made
in cash registers or other data processing equipment.
~~containing locked-in cumulative tapes with cumulation~~

-58-

~~capacity satisfactory to Landlord.  Tenant agrees to~~
notify Landlord of the name ~~and serial~~ numbers of all cash
registers, ~~if any, used~~ at the Demised Premises and of any
~~changes or additions within ten (10) days thereof.~~

41.4  On or before the thirtieth (30th) day of
each month during the Term, Tenant shall furnish Landlord
at the place then fixed for the payment of rent a state-
ment signed by Tenant showing Gross Sales for the preced-
ing calendar month.  Tenant shall require its licensees,
concessionaires or tenants, if any are permitted here-
under, to furnish similar statements.  In addition to such
monthly Gross Sale statements, Tenant and any licensees,
concessionaires or tenants of Tenant shall furnish to
Landlord annual Gross Sales statements for each Fiscal
Year, certified as correct by an independent certified
public accountant (or a financial officer of Tenant at the
grade of Vice-President or higher) on or before the
ninetieth (90th) day following the expiration of each
Fiscal Year.

41.5  In the event that eight percent (8%) of
Gross Sales for any Fiscal Year (or partial Fiscal Year)
during the Term exceeds the Fixed Minimum Rent payable
hereunder for such Fiscal Year (or partial Fiscal Year),
then Tenant shall pay Landlord, at the time the aforesaid
annual statement of Gross Sales is submitted to Landlord
(but in no event later than ninety (90) days after the
expiration of the applicable Fiscal Year), a Percentage
Rent payment based upon the amount of such excess.  Ac-
ceptance of such Percentage Rent by Landlord shall not
constitute waiver of Landlord's right to additional Per-
centage Rent justified by the audit hereinafter described.

41.6  Landlord or its duly authorized represen-
tatives may, during regular business hours, upon at least
five days notice (oral or written), inspect the records of
Gross Sales made by Tenant provided such inspection is
commenced within three (3) years after Landlord's receipt
of a certified annual statement of Gross Sales hereinabove
required and is limited to the period covered by such
statement.  Tenant and each licensee, concessionaire or
tenant shall produce said records on request of Landlord.
If Landlord's audit shall disclose a deficiency in Per-
centage Rent for such period of less than *~~one (1%)~~ percent
of the Percentage Rent due, Tenant shall promptly pay to          *two (2%)
Landlord the amount of such deficiency.  If such audit by
Landlord shall disclose a deficiency in excess of *~~one (1%)~~
percent of the Percentage Rent due, Tenant shall promptly
pay Landlord such deficiency together with interest and
the cost of such audit.

41.7  The Fixed Minimum Rent used in the compu-
tation of Percentage Rent pursuant to Section 41.1 shall
reflect any reduction or abatement of the Fixed Minimum
Rent that is permitted by this Lease during the period
that such abatement or reduction shall be in effect.  ~~In~~
the event that Tenant fails to keep open and operate its
business in the Demised Premises in the manner and during
the days and hours required by this Lease, then, solely
for purposes of computing Percentage Rent pursuant to this
Article for any Fiscal Year or partial Fiscal Year affected
by Tenant's failure to so keep open and operate, the amount
of the Fixed Minimum Rent used in making the computation of
Percentage Rent pursuant to Section 41.1 shall be adjusted
by ~~multiplying~~ the same by a fraction, the numerator of
~~which shall be the actual number of days in such Fiscal~~

-59-

~~dear during which Tenant was open for business and operating~~
in accordance with this Lease, and ~~denominator of which~~
shall be the ~~number of days~~ in such Fiscal Year or partial
~~Fiscal Year.~~

~~41.8  In the event Tenant fails to open for~~
business to the public fully fixtured and staffed as re-
quired hereunder, then and in such event Landlord shall
have, in addition to all remedies in this Lease provided,
the right to collect in addition to the Fixed Minimum Rent
and other sums payable under this Lease a further item of
Rental equal to one and one-half times the Fixed Minimum
Rent per day for each and every day that Tenant shall fail
to be open for business, which Rental shall be deemed to be
in lieu of any Percentage Rent that may have been earned
~~during such period.~~

41.9  Tenant may deduct from each Percentage Rent
payment due hereunder with respect to any Fiscal Year or
partial Fiscal Year the applicable Florida sales taxes paid
by Tenant on the payments of Fixed Minimum Rent made by
Tenant for such Fiscal Year or partial Fiscal Year.


## ARTICLE 42

### EXHIBITS

42.1  The following Exhibits attached to this
Lease are incorporated herein and made a part hereof:

| | |
|---|---|
| Exhibit A: | Lease Plan of Demised Premises |
| Exhibit B: | Site Plan of Shopping Center |
| Exhibit C: | Fixed Minimum Rent |
| Exhibit D: | Outline Plans |
| Exhibit E: | Rent Commencement Date Agreement |
| Exhibit F: | Sign Standards |
| Exhibit G: | Rules and Regulations |
| Exhibit H: | Photograph of Readerboard Sign for "The Movies at Regency" |
| Exhibit I: | Permitted Contractors for the Work |

B1 & B2

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

ATTEST:

PALM SPRINGS MILE
   ASSOCIATES, LTD.
(Landlord)
By: PALM MILE CORP., General Partner

By: _____
  Philip Pilevsky , x Partner Vice President

ATTEST:

UNITED ARTISTS
COMMUNICATIONS, INC.
(Tenant)

By: _____ , President
   Vice

Secretary
Asst

EXHIBIT A

LEASE PLAN OF DEMISED PREMISES



ITE PLAN OF SHOPPING CENTL





SKETCH OF SURVEY

Lying and being in the City of Hialeah

Dade County

Florida

COPY